### WASHINGTON v. STATE.

(Court of Criminal Appeals of Texas. Dec. 4, 1912.)

1. HOMICIDE (§ 295*)—INSTRUCTIONS—APPLICATION TO CASE.

On a trial for homicide, where accused's evidence showed that he was told by his wife that deceased had asked her to have sexual intercourse with him, and that, when he spoke to him about it, deceased said, "Yes; God damn you, what are you going to do about it? I will cut your God damned guts out," and commenced cutting accused with a knife, the court in its charge on manslaughter should have submitted as adequate cause the repetition and renewal of the insult, as well as communicated insults.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 606–609; Dec. Dig. § 295.*]

2. HOMICIDE (§ 340*)—APPEAL — REVERSIBLE ERROR—INSTRUCTIONS.

Where the jury convicted for murder in the second degree and assessed the punishment at 20 years' imprisonment the failure of the court in charging on manslaughter to submit as adequate cause insults shown by the evidence was reversible error.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 715–717, 720; Dec. Dig. § 340.*]

3. CRIMINAL LAW (§§ 1165, 1172*)—APPEAL —REVERSIBLE ERROR.

An erroneous charge or ruling which actually or probably led to a higher punishment than the minimum is reversible error.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3085, 3086, 3088, 3089, 3128, 3154–3157, 3159–3163, 3169; Dec. Dig. §§ 1165, 1172.*]

4. CRIMINAL LAW (§ 1090*)—APPEAL—BILL OF EXCEPTIONS—NECESSITY.

The denial of an application for a continuance will not be reviewed in the absence of a bill of exceptions, especially where other errors necessitate a new trial at which the at-

tendance of the absent witnesses may be obtained.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2653, 2789, 2803–2822, 2825–2827, 2927, 2928, 2948, 3204; Dec. Dig. § 1090.*]

5. CRIMINAL LAW (§ 829*)—INSTRUCTIONS— CURE BY OTHER INSTRUCTIONS.

The refusal of instructions was not erroneous where the court charged in practically the same language, or sufficiently presented the issue in the general charge.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2011; Dec. Dig. § 829.*]

Appeal from District Court, Kaufman County; F. L. Hawkins, Judge.

Sam Washington was convicted of murder in the second degree, and he appeals. Reversed and remanded.

Joel R. Bond, of Terrell, for appellant. C. E. Lane, Asst. Atty. Gen., for the State.

DAVIDSON, P. J. Appellant was convicted of murder in the second degree; his punishment being assessed at 20 years' confinement in the penitentiary.

[1] The serious question in the case is raised on the charge of manslaughter. The court charged upon communicated insults and all the environments of the case in a general way as shedding light on the condition of the mind of appellant at the time he shot and killed the deceased. Without going into a detailed statement of the evidence, we deem it sufficient to state that appellant and deceased were brothers-in-law, and had been on amicable terms. Appellant came home on the day before the homicide, and informed his wife that he felt happy, that he had finished gathering his crop, and that he was going the next day to a nearby town, and wanted herself and children to go over and assist the brother-in-law, deceased, in gathering his cotton. This was late in the evening, and about 24 hours after the alleged insulting conduct on the part of deceased towards appellant's wife. She declined to go, and finally told her husband the reason, and it was this: Deceased had been to the home of appellant and his wife the day before, late in the evening, and, after talking with her a little while, invited her in an adjoining room, with the request substantially that she have sexual intercourse with him. This she declined, and told deceased that she purposed informing her husband. After receiving this information, appellant went to his trunk, got his Masonic apron, and at the same time took from the trunk a pistol, and put it in his pocket. A doctor had been phoned to come to appellant's residence to see a sick child. As appellant left the house and about the time he reached his front gate, the doctor drove up. He returned to the house with the doctor, and went into the room where the sick child was, and, while in there with his wife and the doctor, deceased and his wife

made their appearance and entered the room. The doctor, after diagnosing the case, gave appellant a couple of prescriptions to have filled. He walked out of the house into the yard, where he found his stepson, and gave the prescriptions to him, with the request that he go to the drug store and have them filled. About this time deceased came from the house, and was walking towards the gate, and appellant informed him he wanted to talk with him. They walked for some 75 yards up the road, and appellant reminded him of what he had said, and told him he wanted to have a friendly talk with him about the matter and sever their friendly relations; that he desired to know why he had treated his wife the way he had the day before, and that he had already in other matters, to use his expression, been giving him "dirt." The deceased replied in regard to insulting appellant's wife the day before, "Yes; God damn you, what are you going to do about it? I will cut your God damned guts out;" and immediately rushed at him, and began cutting at him with a knife, and succeeded in cutting two or three holes in his coat, inflicting no injury upon his person, whereupon appellant shot and killed him. This is as favorable as the testimony could be to the defendant. The state's case is to the effect that the parties walked out of the gate and up the road about 75 yards, and while standing talking appellant remarked to deceased, "Look, look Link, your horses are about to run away," and as he turned his head to look in the direction where his wagon was appellant shot and killed him. So far as the state's evidence is concerned, it is made to appear that the deceased had no knife; not only so, but that one of the boys in the wagon had borrowed deceased's knife for the purpose of pealing an apple, and that he had the knife at the time of the homicide in his pocket.

Appellant contends under these circumstances that the court's charge on manslaughter was too restricted, in that he only submitted the issue of manslaughter from the standpoint of communicated insults, contending further that inasmuch as the deceased had repeated to appellant when he talked with him about the matter, "Yes; God damn you, what are you going to do about it? I will cut your guts out," that that was an admission to him at the time of the insult, and therefore a renewal of the insult. This being true, the contention is that the court should have submitted that insult as an adequate cause, as it was a reaffirmance of it, and that the court's charge was too restrictive in limiting to communicated insults, when, in fact, deceased at the time of the homicide had repeated the insults, and deceased challenged the defendant to accept the situation, or to do what

he pleased about it. We are of opinion that appellant's contention is correct, and that the charge on manslaughter is too restrictive. The charge on manslaughter should have been submitted in the light of the statement at the time of the homicide, viewed in the light of the communicated insults by the wife to appellant.

[2] Had the jury given appellant manslaughter with the minimum punishment, it would not have been reversible error, but the jury did not do this. They gave him 20 years for murder in the second degree.

[3] The unbroken line of decisions, as we understand them in Texas, is that where the charge or the ruling of the court is erroneous, and may or probably led, or did lead, to a higher punishment than the minimum, it would be error. If the jury had been properly charged on the facts of the case, and afforded an opportunity to have decided the case on the issues of manslaughter as the facts presented them, this verdict may have been much more favorable than as found by the jury. If the ruling of the court, being erroneous, leads or probably leads to either a conviction when it would not otherwise have occurred, or, conceding the guilt of the appellant, led to a higher punishment than it would had the law been properly given, then in either case the error is fatal, and the judgment should be reversed. This we understand to be the settled law in Texas, and we are not prepared to say that had the court charged the law of manslaughter, in the light of the statements made by deceased at the time of the homicide, the jury might have given appellant a much more favorable verdict than they did give him. They could have given him five years. They could have given him five years for murder in the second degree. They could have given him manslaughter with the minimum punishment of two years, but this they did not do. We are of opinion that this is not only error, but of such a nature as requires this court to reverse the judgment.

[4] In regard to the application for a continuance, we dispose of it by saying, in the first place, a bill of exceptions was not reserved to the ruling of the court, and, in the second place, upon another trial they may obtain the absent witnesses.

[5] Error is assigned on the refusal of the court to give special instructions requested by appellant on the issue of self-defense. We do not believe there was any error in this action of the court, for the reason that the court gave the same charge in practically the same language, or sufficiently and fully presented that issue to the jury in the general charge.

Because of the error in the court's charge on manslaughter, the judgment is reversed, and the cause is remanded.