JIM MOBLEY v. THE STATE.

No. 6085. Decided April 6, 1921.

Rehearing denied June 24, 1921.

</div>

**1.—Murder—Manslaughter—Charge of Court—Weight of Evidence—Article 743.**

Where, upon trial of murder, and a conviction of manslaughter, the charge of the court on manslaughter, when considered in its entirety, showed that the defendant could not have suffered any injury, even if there be foundation for the complaint that it was on the weight of the evidence, and this court being governed by the provisions of Article 743, Vernon's C. C. P., there was no reversible error.

**2.—Same—Charge of Court—Requested Charge—Intent—Accident.**

Where, upon trial of murder and a conviction of manslaughter, the defendant in his requested charges submitted the fact of want of intent to shoot and accidental shooting, but the court's main charge covered these phases of the case, there was no reversible error in refusing these requested charges.

**3.—Same—Evidence—Credibility of Witness—Moral Turpitude.**

Where, upon trial of murder and conviction of manslaughter, the defendant's witness admitted that she was the mother of three children, there was no error in permitting the State, on cross-examination, to ask whether this witness had ever been married. Following McCray v. State, 38 Texas Crim. Rep., 609, and other cases.

**4.—Same—Credibility of Witness—Evidence—Surety.**

Upon trial of murder and a conviction of manslaughter, there was no error in admitting testimony on cross-examination of defendant's witness that he was on his bond, and further, that he had been secured before making such bond, the latter fact tending to lessen the State's claim or bias toward the accused. Following Sorrell v. State, 74 Texas Crim. Rep., 505.

**5.—Same—Evidence—Bill of Exceptions—Cross-Examination.**

Where the bill of exceptions did not show that the answer of the witness was objected to by defendant, because it was not responsive, there was no reversible error; and further, the State cannot be held responsible for an answer of defendant's witness on cross-examination, which was not called for by the question asked.

**6.—Same—Evidence—Army Discharge—Suspension of Sentence.**

Where defendant objected in not being permitted to show that he was in the army service during 1918 and 1919, and to introduce in evidence his army discharge, but the record showed on appeal that the contents of said army discharge contained no statement relative to his general reputation, and prior conviction of a felony, there was no error in excluding same under the facts in the instant case.

**7.—Same—Exhuming Body of Deceased—Evidence—Physicians.**

Where, upon trial of murder and a conviction of manslaughter, an order of the court that the body of deceased be exhumed and examined could have shed no possible light on the contradictory testimony of the two physicians who examined said body as to the vexed question whether they did or did not examine the same for bruises, there was no reversible error.

**8.—Same—Evidence—Declarations by Deceased—Charge of Court.**

Upon trial of murder and a conviction of manslaughter, there was no error in the action of the trial court declining to allow the witness of defendant to testify that deceased told the witness she was engaged to defendant; nor to the claim that some error on the part of the trial court in his charge must have induced the jury to have convicted defendant of manslaughter.

**9.—Same—Rehearing—Bill of Exceptions—Practice on Appeal.**

Where, upon rehearing appellant insisted that this court erred in looking to the statement of facts in aid of appellant's bill of exceptions, complaining of certain testimony, held· that this court is compelled to familiarize itself with the facts, in order to fairly decide the questions involved on appeal; although, the bill of exceptions is defective, whenever it considers it its duty to do so.

**10.—Practice on Appeal—Evidence—Moral Turpitude—Credibility of Witness.**

The contention of appellant that the moral turpitude. which might attach to a white woman who was the mother of illegitimate children should not be imputed to one of color, might be used to the jury in rebutting the effect of such evidence, but could not affect the question of its admissibility.

**11.—Same—Evidence—Discharge from the Army—Good Character.**

Where, upon trial of murder and a conviction of manslaughter, the testimony showed without contradiction by the State that defendant had never been convicted of a felony and that his reputation was good, there was no error in excluding from the jury defendant's discharge from the army, which showed that defendant had been in the army for a short time, and according to his own testimony got no further than camp McArthur.

**12.—Same—Evidence—Order to Exhume Body—Practice on Appeal.**

Where neither the application for the order to exhume, nor the order itself, was admissible to impeach a physician because of his testimony, that he did not examine the body for bruises, the record being bare of any showing of knowledge on the part of said physician of the contents of said application, or order, there was no reversible error.

13.—Same—Manslaughter—Charge of Court—Rehearing.

This court having examined the motion for rehearing complaining of the holdings of this court, that the court's charge on manslaughter was sufficient, the motion for rehearing is overruled.

Appeal from the District Court of Harrison. Tried below before the Honorable P. O. Beard.

Appeal from a conviction of manslaughter; penalty, three years' imprisonment in the penitentiary.

The opinion states the case.

*Abney & Young,* and *M. P. McGee,* for appellant.—On question of surety on bond; Sorrell v. State, 169 S. W. Rep., 399; Dameron v. State, 125 id., 396.

On question of impeaching witness: Flewellen v. State, 204 S. W., 657; Sapp v. State, 223 id., 459; Knight v. State, 147 id., 268.

On question of honorable discharge from army; Cundiff v. State, 226 S. W. Rep., 412; Holland v. State, 187 id., 944.

On question of court's charge: McLaurin v. State, 146 S. W. Rep., 557; Beaver v. State, 86 id., 1020.

*R. H. Hamilton,* Assistant Attorney General, for the State.

LATTIMORE, JUDGE.—Appellant was convicted of manslaughter and his punishment fixed at two years in the penitentiary.

The indictment was for murder. All parties to the affair and all fact witnesses were negroes. As it is insisted that the evidence is insufficient to support the verdict, a determination of which question involves only a consideration of the evidence for the State, we confine ourselves mainly to that. Appellant and deceased were young unmarried negroes who had been going with each other for a couple of years, were making a crop together at the time of the homicide, and seemed to be conducting themselves toward each other ordinarily with affection. The sister of deceased testified that appellant had been staying with deceased every other night, and that on the night of the homicide after they went to bed, she heard them quarreling, and heard deceased crying, and heard her say to appellant that he had been beating on her all the time and she was not going to stand it any longer, and also heard her say to him that he had a child by his aunt and that it could be proven by the whole country, and heard appellant tell deceased to "Mind out or you will overtalk yourself," and that deceased cried more, and presently witness heard her say, "You hurt my neck," and her voice at this time sounded as though appellant was choking her. About fifteen minutes after hearing this statement appellant left the house, and later deceased left the house also; witness stating that she saw her leave and she had no pistol. Appellant owned a pistol which was kept about the bed occupied by him and deceased. When deceased left she told witness that she was going to her mother's.

Other witnesses testified that about 12 o'clock that night appellant was at the house of Mary Richardson, a negro woman, sitting on the porch with her and the two King brothers and Fred Moss, engaged in general conversation. Deceased came up and called appellant, who was whittling, but when he started to her with the knife in his hand, she told him if he came on her with that knife she would blow out his brains. After further parley deceased told appellant she was going to her mother's, and he replied to her that if she went down that road that night they would bury her before the next night, and the deceased said, "They would just have to bury me," and went on down the road. Shortly after she left appellant picked up a stick and went down the same way. Witnesses say they heard a lick presently, and then the fire°of a gun, and then deceased screaming and holloing and saying, "Oh Lord, Jumbo, you have shot me." That a little while later appellant came back to the house and said to the Richardson woman that deceased had shot herself and he wanted her to come down and help bring her to the house, which was done, but deceased lived only a short time and made no further statement. The testimony showed without contradiction that deceased was shot in the abdomen, the bullet entering to the left and little below the navel and making its exit in the right buttock. There was no testimony of any other bruises upon her person, and all the witnesses state that they saw no powder burns either upon the body or the clothing of deceased.

Appellant's claim, supported by his testimony, was that deceased shot herself. He said that when he overtook her on the night of the occurrence, she had gotten through a three wire fence into a field, and he wanted her to come back and she started to get through the fence between the second and bottom wires, and while she was so engaged a pistol which she had went off and she exclaimed that she was shot in the leg. It further appears that after appellant's examining trial the court ordered the body of deceased exhumed and an examination made of same, which was done by two physicians, who corroborate each other as to the bullet wound and the fact that no bruises were found upon the body, but contradicted each other as to whether or not an examination was made for bruises, one stating that such examination was made and the other, that it was not.

Appellant asserts that the charge of the court on manslaughter was on the weight of the evidence, and assumed that appellant did the killing, which was a disputed issue. The portion of the charge thus complained of is as follows:

"In order to reduce voluntary homicide to the grade of manslaughter it is necessary that not only adequate cause existed to produce the state of mind referred to, that is, of anger, rage, sudden resentment or terror, sufficient to render it incapable of cool reflection, but also that such state of mind did actually exist at the time of the commission of the offense, and although the law provides that the provocation causing the sudden passion must arise at the time of the killing, it is the

duty of the jury in determining the adequacy of the provocation, if any, to consider in connection therewith all the facts and circumstances in evidence in this case; and if you find that by reason thereof the mind of Jim Mobley at the time of the killing was incapable of cool reflection, and that the said facts and circumstances were sufficient to produce such a state of mind in a person of ordinary temper, then the proof as to the sufficiency of the provocation satisfies the requirements of the law; and so in this case you will consider all the facts and circumstances in evidence in determining the condition of the mind of Jim Mobley at the time of the killing and the adequacy of the cause, if any, producing such condition."

If the quoted part of the charge stood alone, it might be subject to the criticism leveled at same, but it is a settled rule that all parts of a charge must be looked to in an effort to arrive at a correct decision as to whether a particular portion be erroneous. The concluding portion of paragraph 4 of said charge, preceding paragraph 6 here complained of, is as follows: "If you believe from the evidence beyond a reasonable doubt that the defendant is guilty of some grade of culpable homicide, but have a reasonable doubt as to whether the offense is murder or manslaughter—then in such case if you find him guilty it will be of no higher grade of offense than manslaughter." Reverting to the opening sentence of paragraph 6, we see that it indicates that the contents of said paragraph of the charge states the law only in the case of a voluntary homicide, and it would not appear likely that the jury misunderstood the purport of said paragraph. We also observe that in paragraph 9 of said charge the court definitely instructs the jury as follows:

"If you believe from the evidence that Ann Jacobs shot herself accidentally with a pistol, you will acquit the defendant; or if you have a reasonable doubt as to whether she shot herself accidentally you will give the defendant the benefit of that doubt and acquit the defendant, or, if you believe that the deceased came to her death by a shot accidentally fired by the defendant, or if you have a reasonable doubt as to whether defendant accidentally shot the deceased you will acquit the defendant."

Looking to the entire charge we are unable to conclude that appellant could have suffered any injury, even if there be foundation for the complaint under discussion, because of the fact that the remainder of the charge plainly negatives the fact so inferred. We must, therefore, be governed by the following provision of Article 743, Vernon's C. C. P.:

"Whenever it appears by the record in any criminal action upon appeal of the defendant that any of the requirements of the nine preceding articles (arts. 735-742) have been disregarded, the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of the defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial."

Appellant's special charge No. 4 to the effect that if he fired the shot and did not intend to shoot deceased, and No. 2 to the effect that if he shot her but same was accidental, were fully covered by paragraph 9 of the main charge just above quoted. If the shot was fired by appellant, but without the intent to shoot deceased, its striking her would be but an accident, and we see no reason to think it would not be so understood by the jury. Further, we find no suggestion in the record supporting the theory of a shot fired by appellant without intent to strike deceased, and the court might have refused both charges for this reason. The statement of facts discloses that according to all the State's testimony deceased cried out immediately after the shooting that appellant had shot her, and the testimony with reference to there being no powder burns on the body or clothing of deceased seems to rebut any idea of her shooting herself. On the other hand, appellant claimed in his first statement after the shooting and also when on the witness stand, that deceased shot herself. No witness testified that appellant shot without intention of striking, or to any other phase of accidental shooting by him.

Appellant objected to the State's question on cross-examination, to his witness Mary Richardson, as to whether she had ever been married. The evidence of this witness was very partial to appellant. She said she lived with her three children 6, 10 and 13 years of age at the house to which appellant went after his quarrel with deceased on the night of the homicide. She also stated that he very frequently came to see her. In answer to the question objected to, the woman stated that she had never been married. The history, antecedents, occupation, etc., of a witness are always legitimate subjects of investigation, and especially so on cross-examination. We have held that on cross-examination a witness may be asked if she is not a common prostitute. Smith v. State, 86 Texas Crim. Rep., 455, 127 S. W. Rep., 154; McCray v. State, 38 Texas Crim. Rep., 609. The inquiry of one who has admitted herself to be the mother of three children, as to whether she has ever been married, involves a matter which we think the State entitled to ask and the jury to know. Brittian v. State, 47 Texas Crim. Rep., 602. A woman so morally degraded as to become the mother of a number of illegitimate children, would not be entitled to stand upon the same plane as a witness who was of good repute, nor do we think it any abuse of the sound discretion of the trial court to allow such question on cross-examination.

Upon the cross-examination of appellant's witness W. W. Woodley, who had given evidence in chief as to appellant's good character, the State brought out the fact that he was on appellant's bond, and further that he had been secured before making such bond. That a defense witness is a bondsman of the accused is admissible as affecting his interest or bias. Sims v. State, 45 S. W. Rep., 705. We find nothing in the cases cited by appellant,—Damron v. State. 58 Texas Crim. Rep., 255, 125 S. W. Rep., 396; Serell v. State, 74 Texas Crim. Rep., 505,

169 S. W. Rep., 299,—sustaining appellant's objection to the fact that the witness had been given security when he went on appellant's bond. Such evidence would appear to be favorable to the accused as minimizing the act of the witness in making such bond purely as a matter of interest or friendship to the accused; it appearing that the fact of his having security would lessen the State's claim of bias toward the accused.

Appellant complains of the admission of the statement of his witness R. H. Woodley on cross-examination to the effect that he thought everybody would sleep better by his being secured, whether defendant was guilty or not guilty. The bill of exceptions does not show the question asked by the State, to which this answer was given, but the statement of facts does present both this question and answer, and it appears evident that the answer given was not responsive to the question asked by the State. It does not appear from the bill of exceptions that the answer was objected to by appellant because it was not responsive, and we do not think the State can be held responsible for an answer of appellant's witness on cross-examination which is not called for by the question asked.

It was shown that appellant was in the army service seven months during 1918-1919, but that he was not sent out of this country, and his army discharge was offered by the defense as evidence tending to prove a good character, as affecting his application for a suspended sentence. An examination of the statutes governing suspended sentences discloses the fact that two issues are mentioned upon which proof may be made by the accused who asked for such suspended sentence, to-wit: general reputation, and prior conviction of a felony. The contents of said army discharge, as disclosed by the record, if admissible for any purpose, contained no statement relative to either of said propositions. Appellant testified as did his other witnesses without contradiction to his previous good character, and that he had never been convicted of a felony.

The order of the court directing that the body of deceased be exhumed and examined, could have shed no possible light on the contradictory testimony of the two physicians who examined said body, as to the vexed question whether they did or did not examine for bruises. Especially is this true when the order as copied in the bill of exceptions discloses no directions by the court as to what the purpose or scope of the examination should be.

We find no error in the action of the court declining to allow the witness Allen to testify that deceased told her she was engaged to appellant. According to the testimony of the State witnesses, they had been going together for a couple of years and were practically living together at the time of the homicide. Nor do we think any weight attaches to appellant's claim that some error on the part of the trial court in the charge must have induced the jury to have convicted appellant of manslaughter. No power known to this court can look into the

mind of juries or ascertain their reasons for arriving at a given con-
clusion from a given state of facts. The trial courts can only give them
the charge, stating the law as correctly and completely as possible, and
if the verdict be within the inclusion of the law stated, and gives no
evidence of passion or prejudice against the accused, he has no room
for complaint because they gave him the lowest punishment for the
smallest degree of the offense submitted by the court.

Finding no error in the record the judgment of the trial court will
be affirmed.

*Affirmed.*

ON REHEARING.

June 24, 1921.

LATTIMORE, JUDGE.—By a most vigorous motion for rehearing
appellant complains of a number of matters as erroneous in our orig-
inal opinion. It is insisted that we erred in looking to the statement of
facts in aid of appellant's bill of exceptions No. 5 complaining of
certain testimony stated to have been elicited from defense witness
Robert Woodley on cross-examination. Said bill of exceptions was
wholly insufficient and failed to state the facts and circumstances sur-
rounding the giving of such evidence so that we might know from
said bill what the exact statement of said witness was, and how same
was elicited or made material, relevant and competent, or otherwise.
Rather than reject the bill in the form it appeared in the record, we
looked to the statement of facts to further investigate the matter. In
doing this appellant contends we erred. Our views upon the duty of
this court in such matters, are to some extent discussed by Presiding
Judge MORROW in Plummer v. State, 86 Texas Crim. Rep., 487, 218
S. W. Rep., 501. We think we are compelled in every case to fa-
miliarize ourselves with the facts in order to fairly decide questions
affecting the lives and liberties of the citizens whose cases are before
us, and do not permit ourselves to be bound by such iron-clad rules in
this regard, as we might. Had we so regarded our duty, we would not
have given this bill consideration any further than to call attention to
its defects. Appellant's bills of exception Nos. 5 and 6 were insuffi-
cient but we did discuss the matters therein stated and decided them
as we think correctly.

We do not think we erred in holding that Mary Richardson might be
asked on cross-examination if she had been married, the testimony
showing that she was the mother of three children. In McCray v.
State, 38 Texas Crim. Rep., 609, we quoted approvingly the following:

"As was said by CAMPBELL, J., in Wilbur v. Flood, 16 Michigan,
40-43 (cited in Thompson on Trials, p. 404): 'It has always been
found necessary to allow the witnesses to be cross-examined, not only
upon the facts involved in the issue, but also upon such collateral mat-

ters as may enable the jury to appreciate their fairness and reliability. To this end a large latitude has been,given, where circumstances seemed to justify it, in allowing a full inquiry into the history of witnesses, and into many other things tending to illustrate their true character. This may be useful in enabling the court or jury to comprehend just what sort of person they are called upon to believe, and such a knowledge is often very desirable. It may be quite as necessary, especially where strange or suspicious witnesses are brought forward, to enable counsel to extract from them the whole truth on the merits. It can not be doubted that a previous criminal experience will depreciate the credit of a witness, to a greater or less extent, in the judgment of all persons, and there must be some means of reaching this history. The rules of law do not allow specific acts of misconduct, or specific facts of a disgraceful character, to be proved against a witness by others. . . . Unless the remedy is found in cross-examaination, it is practically of no account. It has always been held that, within reasonable limits, a witness may, on cross-examination, be very thoroughly sifted upon his character and antecedents. . . . We think a witness may be asked concerning all antecedents which are really significant, and which will explain his credibility. . . . He must be better acquainted than others with his own history, and is under no temptation to make his own case worse than truth will warrant. There can, with him, be no mistr'ke of identity. If there are .extenuating circumstances, no one els ᴖan so readily recall them. We think the case comes within the well-established rules of cross-examination, and that the few authorities which seem to doubt it have been misunderstood, or else have been based upon a fallacious course of reasoning, which would, in nine cases out of ten, prevent an honest witness from obtaining better credit than an abandoned ruffian.' "

The McCray case has been often cited with approval by this court. The argument stressed in appellant's brief that the moral turpitude which might attach to a white woman who was the mother of illegitimate children should not be imputed to one of color, might be used to a jury in rebutting the effect of such evidence, but could hardly be expected to affect the question of its admissibility.

Cundiff v. State, 88 Texas Crim. Rep., 30, 226 S. W. Rep., 412, is cited as holding contrary to our views that the trial court committed no error in rejecting the contents of appellant's discharge from the army, offered for the purpose of proving his good character and that he had not been convicted of any criminal offense while not a resident of Harrison county. An examination of the opinion in the Cundiff cases discloses that there was no statement of facts therein and said case was affirmed, the court discussing at some length the question of the right of the accused to testify to his own good reputation in various regards. The language of the opinion in that case was very guarded and went no further than to say that in a proper case, papers showing the service in the war and honorable discharge of the accused might

be admissible.  Such statement necessarily partook more or less of the character of *dicta* in view of the absence of the statement of facts.  If a case were before the court in which one who had been over-seas in service until approximately the time of the commission of the offense and who was otherwise deprived of the opportunity of establishing that he had not been theretofore convicted of a felony, and it was shown that he was without power to prove by ordinary means his previous good character, we might be inclined to hold admissible such papers as a circumstance looking in that direction.  We do not believe the case before us is a proper case for the introduction of such evidence.  In People v. Eckman, 72 Cal., 582, the court held the contents of an army discharge inadmissible as affecting character.  In the instant case while the facts showed appellant to have been in the army for a short time, according to his own testimony he got no further than Camp McArthur, and had been a resident of Harrison County all of his life. It was in testimony by the defense without contradiction by the State, that appellant had never been convicted of a felony, and that his reputation was good.  We are of opinion that the rejection of said evidence was not error under the facts of this case.

Neither of the two physicians who exhumed the body of deceased said they had ever seen the order of the court directing such exhumation, or the application for such order.  The record does not otherwise show that they had knowledge of the contents of said order or application.  Dr. Hall testified that they were instructed to ascertain if the neck of deceased was broken and where she was shot.  Who gave such instructions was not stated.  Dr. Littlejohn in his testimony said nothing about any instructions from any source save that he was a member of a commission to exhume said body.  Neither the application for the order to exhume, nor the order itself was admissible to impeach Dr. Hall because of his testimony that they did not examine the body for bruises, the record being bare of any showing of knowledge on the part of said physician of the contents of said application or order.

We have examined the motion complaining of our holding in regard to the charge of the trial court on manslaughter and think the contention without merit.

Being unable to conclude that we erred in our former disposition of the case, appellant's motion for rehearing is overruled.

*Overruled.*