## Henry Yeager v. The State.

No. 7387.    Decided December 5, 1923.

#### 1.—Assault to Murder—Aggravated Assault—Charge of Court.

Where all the defensive matters in the testimony were sharply controverted by the State and the issue of aggravated assault was raised, the court should have charged upon aggravated assault as requested, and it was immaterial whether the jury would or not accept the evidence as true, or in what light it was regarded by the trial judge. Following Lewis v. State, 89 Texas Crim. Rep., 345.

#### 2.—Same—Charge of Court—Self-Defense.

Where the court affirmatively submitted the case from the standpoint of the State, he should also have embraced the idea that the jury must also find that the assault was not made in self-defense.

#### 3.—Same—Self-defense—Charge of Court—Standpoint of Defendant.

In making an application of the law of self-defense to the facts the court should also have told the jury that if it appeared that defendant, from his standpoint at the time he was in danger of losing his life, etc., he should be acquitted.

#### 4.—Same—Evidence—Moral Turpitude.

Where it appeared from the record that the prosecution which the State had elicited on cross-examination was dismissed and that appellant had never been subsequently indicted for felony or a misdemeanor involving moral turpitude, the fact of the former indictment should not have been admitted. Following Thomas v. State, 63 Texas Crim. Rep., 98, and other cases.

#### 5.—Same—Evidence—Credibility of Witness.

The defendant should have been permitted to ask the State's witness upon cross-examination if at a time not too remote he was engaged in the business or occupation of knowingly renting his property to prostitutes in which to ply their vocations. Following Mobley v. State, 89 Texas Crim. Rep., 646.

Appeal from the District Court of Bexar. Tried below before the Honorable W. S. Anderson.

Appeal from a conviction of assault to murder; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*W. C. Linden,* for appellant. On question of aggravated assault, Steen v. State, 225 S. W. Rep., 529.

On question of evidence of moral turpitude, Winn v. State, 113 S. W. Rep., 918, and cases cited in opinion.

On question of moral turpitude of State's witness, Britton v. State, 85 S. W. Rep., 278; McCray v. State, 44 id., 170.

*Tom Garrard* and *Grover C. Morris,* Assistants Attorney General, for the State.

HAWKINS, JUDGE.—Conviction is for assault with intent to murder one W. Keilman. Punishment, five years confinement in the penitentiary.

Keilman was the proprietor of the "Horn Palace Inn," at which place the transaction occurred out of which this prosecution grew. It was the State's theory that the assault on Keilman was the result of an agreement or understanding among appellant, his son (Otis Yeager) and other parties to murder Keilman. This was controverted by appellant, he and his witnesses claiming that the difficulty was begun by Keilman making an unprovoked assault on appellant. It is asserted that if death had resulted the evidence raised the issue of manslaughter, and that the court should have instructed on aggravated assault. Timely complaint was made of the omission of this issue from the charge. Appellant introduced testimony showing that some months previous to the present transaction Otis Yeager (appellant's 19 year old son) had been beaten up at Keilman's place, and that some two months before Keilman, without cause, had ordered appellant and his wife off his dance floor, and had struck him over the head with a pistol when he attempted to reason with Keilman about it; that Otis Yeager had not been at home for several nights and that a friend telephoned appellant that Otis had gone to the "Horn Palace Inn"; that on account of previous occurrences there appellant was uneasy about his son, and that appellant and his wife went to Keilman's place looking for Otis to induce him to leave; that while appellant was looking through a door in an endeavor to locate his son, Keilman approached from his rear or side, and struck at his head with a pistol; that appellant dodged and the blow missed his head and struck his shoulder; that he immediately

drew his pistol and fired; that a general fight and scuffle then ensued in which several more shots were fired, some by appellant and his son, resulting in desperately wounding Keilman. All these defensive matters were sharply controverted by the state. In determining whether certain issues are raised upon the law of which the court should instruct the jury it is immaterial whether the jury would or not accept the evidence as true, or in what light it was regarded by the trial judge. The question here under discussion was reviewed at some length in Lewis v. State, 89 Tex. Cr. Rep., 345, 231 S. W. Rep., 113, and a number of authorities cited. We quote from the Lewis case:

" 'If the case is either murder or perfect self-defense, it is not error to fail to charge on manslaughter' (Branch's Crim. Law, Sec. 505, and collated authorities) but where the case becomes involved from the issues raised, and it is claimed the killing resulted from a fight, and the facts of its inception or progress become controverted issues raising the question of self-defense, it is a rare instance where the issue of manslaughter does not also become pertinent. Steen v. State, 88 Texas Crim. App. 256; Washington v. State, 63 Texas Crim. Rep., 589, 151 S. W. Rep., 819; Menefee v. State, 67 Texas Crim. Rep., 201, 149 S. W. Rep., 138; Pickens v. State, 86 Texas Crim. Rep., 662, 218 S. W. Rep., 755; Arnwine v. State, 49 Texas Crim. Rep., 6, 90 S. W. 39.''

It is unnecessary to go into all the details of the evidence, but from a close examination of it we have reached the conclusion that appellant was entitled to a charge upon aggravated assault. Our reasons are stated more fully in the opinions above cited.

In affirmatively submitting the case from the standpoint of the state the jury were instructed in substance to find appellant guilty if he made an assault upon Keilman with a deadly weapon with malice aforethought with intent to kill him. The charge was excepted to because it failed to embrace the idea that the jury must also find that the assault by appellant was not made in defense against an unlawful assault upon him by Keilman. In view of the entire charge we are not prepared to say that such omission from the particular paragraph complained of should be held reversible error; but we call attention to it in view of another trial, believing it better to include this idea in connection with this paragraph.

In charging generally upon self-defense the court instructed the jury that a reasonable apprehension of death or great bodily harm would excuse a party in protecting his life, provided he acted upon a reasonable apprehension of danger as it appeared to him from his standpoint at the time, but in making an application of the law of self-defense to the facts he omitted to tell the jury if it appeared to defendant from his standpoint at the time that he was in danger

of losing his life or suffering serious bodily injury at the hands of Keilman he should be acquitted. This element of self-defense should not have been omitted from the charge applying the law.

While appellant was testifying in his own behalf the state upon cross-examination and over objection elicited the fact that twenty-one years ago he had been indicted for murder in the state of Arkansas. It appears from the record that this prosecution was dismissed, and that appellant had never been subsequently indicted for a felony or a misdemeanor involving moral turpitude until the indictment in the present case was returned. Proof of the former indictment should not have been admitted. It was too remote. (See many authorities cited under Section 170, Branch's Ann. P. C.); also, Thomas v. State, 63 Texas Crim. Rep., 98, 138 S. W. Rep., 1018; Winn v. State, 54 Texas Crim. Rep., 538, 113 S. W. Rep., 918; Bullington v. State, 78 Texas Crim. Rep., 187, 180 S. W. Rep., 679.

Prosecuting witness Keilman was shown to have been the proprietor of what was known as the "Beauty Saloon" up to about six years before the beginning of the present prosecution. He was asked what other business, if any, he had in connection with the "Beauty Saloon;" objection was interposed by the state and sustained. The bill of exception presenting the matters developed from the witness in the absence of the jury is in question and answer form and for that reason can not be considered. In view of another trial we have examined the bill far enough to ascertain that appellant was seeking to show by Keilman that in connection with the saloon he had other property which he rented to prostitutes. It was held in McIntosh v. State, 91 Texas Crim. Rep., 392, 239 S. W. Rep., 622, that a female witness might be asked, as affecting her credibility, if she had not been convicted of being a vagrant, to-wit, a common prostitute, overruling to the contrary Neyland v. State, 79 Texas Crim. Rep., 652, 187 S. W. Rep., 196 and Ellis v. State, 56 Texas Crim. Rep., 14, 117 S. W. Rep., 978. We have also held that as affecting her credit a female witness may be asked if she is not a common prostitute. Mobley v. State, 89 Texas Crim. Rep., 646, 232 S. W. Rep., 531; Campbell v. State, 89 Texas Crim. Rep., 243, 230 S. W. Rep., 695; Smith v. State, 86 Texas Crim. Rep., 455, 127 S. W. Rep., 154; McCray v. State, 38 Texas Crim. Rep., 609. As we understand it this latter character of cross-examination is permissible,—not upon the ground that isolated acts of immoral conduct may be shown to impeach a witness, for proof of such isolated acts is inhibited,—but upon the ground that the history, occupation, etc., of a witness are always legitimate subjects of investigation. Underhill's Cr. Evidence, 3d Ed. Section 387. If it can be shown by cross-examination of the female witness that she is en-

gaged in a business or occupation odious and disgraceful in itself to be considered in determining to what extent she is worthy of credit, by the same process of reasoning then it occurs to us that a male witness could be asked upon cross-examination if at a time not too remote he was engaged in the business or occupation of knowingly renting to prostitutes his property in which to ply their vocation.

For the reasons already given the judgment is reversed and the cause remanded.

*Reversed and remanded.*