**Jared Ellison CRAVENS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 366–84.

Court of Criminal Appeals of Texas, En Banc.

March 27, 1985.

Wendell A. Odom, Jr., Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., and Winston E. Cochran, Jr., Asst. Dist. Atty., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MILLER, Judge.

Appellant was convicted by a jury of two counts of rape of a child pursuant to former V.T.C.A. Penal Code, § 21.09.[1] Punishment was assessed by the court at 12 years confinement in the Texas Department of Corrections. On appeal, the Houston Court of Appeals affirmed the conviction in a published opinion. *Cravens v. State*, 663 S.W.2d 668 (Tex.App.—Houston [1st Dist.] 1983).

We granted appellant's petition for discretionary review to examine the continued viability of the holding of cases like *Smith v. State*, 86 Tex.Crim. 455, 217 S.W. 154 (1919), and *Feather v. State*, 169 Tex.Crim. 334, 333 S.W.2d 851 (1960), which held that for purposes of aiding the factfinder's credibility determination, a female witness may be asked on cross-examination whether she is a "common prostitute." The nexus between truthtelling and this particular occupation was first expounded upon by Judge Henderson in *McCray v. State*, 38 Tex. Crim. 609, 44 S.W. 170 (1898). Judge Henderson stated that:

> "In common experience, it is known that persons who are so morally degraded as to ply their vocation as common prostitutes are not on a plane with the mass of people who follow legitimate and honorable vocations, in the matter of integrity. As a general rule, they are no more capable of telling the truth than one who has been convicted of a felony, or of some misdemeanor involving moral turpi-

tude, and they are not more worthy of belief than such a one."

Twenty years later in *Smith*, supra, this Court held that it was proper for a defense witness to be asked on cross-examination if she is a common prostitute. Citing *Smith*, supra, the Court in *Feather*, supra, allowed the same question of a defense witness upon cross-examination. *Feather*, however, expanded upon this by holding that "[t]his is so only where the question is asked in good faith and an affirmative answer is expected."

Also relied upon in *Feather*, supra, is *Myers v. State*, 149 Tex.Crim. 301, 194 S.W.2d 91 (1946), which held that ordinarily a witness may be asked their occupation and that a "witness may be asked, upon cross-examination, if she is a common prostitute" but cannot be impeached upon the answer given.[2] Further, we held that "[a] witness may not be impeached by proof of specific acts of misconduct which have not eventuated into an indictment or conviction." This limitation has been basically codified by our Legislature in Art. 38.29, V.A.C.C.P.[3]

The court of appeals, in its opinion in this case, dismissed appellant's complaint stating that "[i]t is well established that a witness may be asked on cross-examination if she is a common prostitute." We believe that since this "impeachment" practice was justified solely by the common experience or mores of the day in the 1890's, and since the Legislature has since seen fit to codify the prohibition against impeachment by pri-

1. Repealed by Acts 1983, 68th Leg., p. 5321, ch. 977, § 12, effective September 1, 1983.

2. See also, *Conway v. State*, 33 Tex.Crim. 327, 26 S.W. 401 (1894), which held that, upon cross-examination, the State could ask a defense witness if he was a confidence man, followed the occupation of working the knife racket, and was a common thief. "But, if [the witness] though compelled to answer the questions, should deny that he pursued such occupations or was a thief, the State would be at its end ..."

3. Article 38.29, V.A.C.C.P., states in pertinent part:

"The fact that a defendant in a criminal case, or a witness in a criminal case, is or has been, charged by indictment, information or complaint, with the commission of an offense against the criminal laws of this State, of the United States, or any other State shall not be admissible in evidence on the trial of any criminal case for the purpose of impeaching any person as a witness unless on trial under such indictment, information or complaint a final conviction has resulted, or a suspended sentence has been given and has not been set aside, or such person has been placed on probation and the period of probation has not expired."

or acts of misconduct,[4] a reanalysis is in order.

■ First we must define the nature and scope of our inquiry. This is not a question of simple impeachment by proof of prior acts of misconduct; to wit, prostitution. If it were, a simple reference to Art. 38.29, V.A.C.C.P., would dispose of the matter. Rather, this query concerns the interrelationship with an entirely different evidentiary rule of admissibility that, in this instance, accomplishes the same purpose of impeachment. That rule allows the admissibility of testimony concerning a witness' occupation in order to aid the trier of fact. Germane to the case at hand, *Yeager v. State*, 96 Tex.Crim. 124, 256 S.W. 914 (Tex. Cr.App.1923), interpreted the rule as follows:

> "We have also held that as affecting her credit a female witness may be asked if she is not a common prostitute [citing *McCray*, supra, and other cases]. As we understand it, this latter character of cross-examination is permissible, not upon the ground that isolated acts of immoral conduct may be shown to impeach a witness, for proof of such isolated acts is inhibited [sic], *but upon the ground that the history, occupation, etc. of a witness are always legitimate subjects of investigation.* Underhill's Cr. Evidence (3rd Ed.), § 387 at 915." (Emphasis supplied)

When the occupation is reputable, it assumedly adds to a witness' credibility. Contra, when the occupation is not so reputable in the eyes of the trier of fact, it detracts from credibility just as true impeachment evidence does. Indeed, this court has often referred to this testimony as "impeachment," thus adding to the confusion that is perpetuated in the concurring opinion.

Our inquiry, then, is whether the occupation of a witness is so probative of his or her credibility as to outweigh any prejudicial effect that occupation might simultaneously engender by its revelation. In general, "[q]uestions as to the place of residence and occupation of the witness, and the like, may be asked for the purpose of identifying him and placing before the jury facts from which they may judge of his standing and the weight to be given his testimony." Thus, an inquiry into a witness' occupation is probative enough of credibility to be admissible. 37 Tex.Jur.3d, Evidence, § 666 (1984).

A question as to the occupation at hand—prostitution—deserves special handling, however, because it de facto reveals prior acts of misconduct pursuant to V.T. C.A. Penal Code, § 43.02, evidence of which is prohibited by Art. 38.29, supra. No other "occupation" which would de facto reveal acts of misconduct, i.e., common loiterer, common burglar, common criminal, etc., has a rule of admissibility similar to the one in question.[5] As discussed earlier, un-

4. Article 38.29, V.A.C.C.P., 1965, set out in n. 1, finds its origins in Art. 732a, V.A.C.C.P., 1925, added by Acts 1951, 52nd Leg., p. 814, ch. 458, § 1, which read as follows:

   "The fact that a defendant in a criminal case, or a witness in a criminal case, is, or has been, charged by indictment, information or complaint, with the commission of an offense against the criminal laws of this State, of the United States, or any other State shall not be admissible in evidence on the trial of any criminal case for the purpose of impeaching any person as a witness unless on trial under such indictment, information or complaint a final conviction has resulted, or a suspended sentence has been given and has not been set aside, or such person has been placed on probation and the period of probation has not expired."

5. In fact, all other occupations which de facto reveal prior acts of misconduct seem already to be subject to a different rule of admissibility.

   "A witness for the state or for the accused may be asked 'What is your occupation?' though his occupation, whether known to the cross-examiner or not, is such that the jury will distrust his testimony. However, if instead of asking the witness what his occupation is, the cross-examiner should ask him if he is not engaged in some named discreditable occupation, the question is improper." 25 Tex.Jur.3d, Criminal Law, § 3336 (1984).

   As stated in Ray, Texas Law of Evidence (Texas Practice 3rd ed. 1980), § 657, 1 Texas Practice 586:

   "In both civil and criminal cases a witness may be asked what occupation he pursued or in what business he was engaged. But in

der Art. 38.29, supra, the general rule regarding impeachment of witnesses is that a witness, by testifying, places his credibility in issue, and the opposing party may seek to impeach such credibility by proof that the witness has been *convicted* of a felony offense or a misdemeanor involving moral turpitude.

■ On balance then, when determining the credibility of a witness is the issue, whatever probative value knowledge that the witness is a common prostitute has is outweighed by the legislatively mandated prohibition against impeachment by prior acts of misconduct. To allow such a question for this purpose, over objection, is error. To the extent they are in conflict, the *McCray* line of cases, including *Smith, Feather, Myers,* supra and *Sanford v. State,* 120 Tex.Crim. 249, 46 S.W.2d 307 (1932), are overruled.

Turning now to the case at bar, the complainant was the thirteen year old adopted daughter of appellant. Complainant's mother and appellant were divorced and appellant had remarried. Complainant continued to visit appellant and spent alternate weekends with him and his present wife, Cathy Cravens, and their family.

Appellant alleges in his first and second grounds of error that the trial court erred in allowing the prosecutor to improperly impeach the witness, Cathy Cravens, by asking her if she was a common prostitute and not being bound by her negative answer.

Cathy Cravens was called as a defense witness and testified regarding the relationship between the complainant, complainant's mother, and appellant. Her testimony established the fact that there was extreme animosity between the family of the complainant and the family of the appellant. Indeed, this animosity reached such a degree that a fight occurred in the hall outside of the courtroom between defense and prosecution witnesses. She also testified regarding specific events that occurred on or about the time of the alleged offenses, the proximity of the sleeping quarters at their home, sleeping arrangements at the motel they used on visits to the beach, and the inability of the appellant to commit the acts alleged by the complainant.

■ Germane to appellant's contention that this chief defense witness was improperly impeached, the record shows the following occurred during the cross-examination of Cathy Cravens:

"Q. Isn't it true, Ms. Cravens, that you have worked as a common prostitute?

"MR. CONKLIN: I would object to that and ask the Court to remove the jury.[6]

"THE COURT: Would you wait out in the jury room, please, ladies and gentlemen?

(At this time the jury is retired to the jury room and the following proceedings are had out of the presence of the jury.)

"MR. CONKLIN: Judge, my objection is that he is going into a rap sheet here and he is asking her if she worked as a common prostitute. That evidence is not admissible. He can ask her if she was convicted of anything, but he is going into a rap sheet and showing it to the jury in an attempt to inflame their minds and infer that she has been convicted of something. He is only inferring these things to inflame the minds of the jury.

"THE COURT: *For what purpose* are you offering this testimony?[7]

"MR. EGGLESTON: *Impeachment. To impeach this witness's character showing moral turpitude.*

"THE COURT: The Court will overrule the objection.

---

criminal cases it seems that he may not be asked if he was in a specific business, where such business is unlawful."

See *Cadle v. State,* 122 Tex.Crim. 595, 57 S.W.2d 147 (1932), which disallowed the question "[a]re you a bootlegger?"

**6.** Though the appellant's objection was not to the form of this question, we note that it is improper. See footnote 5.

**7.** Emphasis in this testimony is supplied by the writer of this opinion.

"MR. CONKLIN: May I see those cases he handed you, Judge? I'd like to know what he wants to impeach her on.

"THE COURT: Read that case. The Court of Criminal Appeals held that you could ask the witness that. In view of the facts in this case, I rule that the testimony is admissible. In view of her testimony—

"MR. CONKLIN: This is a 1931 case.[8] From this particular case, the facts do not apply to this case here at all. The only question the prosecutor ought to be able to ask Ms. Cravens is if she has ever been convicted of a felony or a misdemeanor involving moral turpitude during the past ten years.

"THE COURT: The court will overrule the objection. Bring in the jury.

"MR. CONKLIN: We would except and respectfully move for a mistrial.

"THE COURT: Overruled.

"MR. CONKLIN: Before we bring the jury in, would you instruct the prosecutor not to pull the rap sheet up in front of the jury?

\* \* \* \* \* \*

"Q. Inasmuch as my last question to you was not answered or was at least not audible, I would ask if you would respond to the same question in the same way?

"A. I said no, I was not.

\* \* \* \* \* \*

"Q. Well let me ask you this. If in fact somebody has worked as a prostitute, they do develop a sense of acting, do they not?

\* \* \* \* \* \*

"Q. That's part of the craft, isn't it, Ms. Cravens?

"A. I don't know.

"Q. I'm bound by your answer. I couldn't disprove your answer under the law, can I? [9]

"A. No, sir.

Though proffered by the prosecutor for "impeachment," the judge clearly relied on *Sanford*, supra, which relies on the *McCray* line of cases discussed throughout this opinion. Thus, it is clear that the trial judge allowed the question for purposes that we have deemed improper.

For the reasons given above, we hold that this question was clearly improper and constituted error. The question of whether this constituted harmful error was not, understandably, briefed in the court of appeals nor was it a part of that court's decision being reviewed in this Court. This cause, therefore, will be remanded to the court of appeals for a determination of the harmfulness of this error.

■ In his third ground of error (review of which was also granted though not alluded to earlier), appellant alleges that the trial court erred in allowing the prosecutor to infer guilt to the appellant by indicating that he associated with a person of bad character, namely, Cathy Cravens. It is a rule of appellate review that the issue on appeal must comport with the objection made at trial. If the objection at trial is different than the argument on appeal, nothing is preserved for review. See *Hodge v. State*, 631 S.W.2d 754 (Tex.Cr. App.1982); *Vanderbilt v. State*, 629 S.W.2d 709 (Tex.Cr.App.1981), *cert. denied*, 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 169 (1982); and *Nelson v. State*, 607 S.W.2d 554 (Tex.Cr.App.1980). In the case at bar, the trial objection to impeachment of the defense witness did not preserve the question of guilt by association. Just as this issue was not before the trial court or the court of appeals, it is not properly before this Court.

8. Apparently *Sanford v. State*, 120 Tex.Crim. 249, 46 S.W.2d 307 (1932). As reported in the Southwestern Reporter, a 1931 case fronts the page of Sanford applying to the question asked.

9. This statement by the prosecutor clearly implies that there is more he would like the jury to hear and is an improper comment.

The judgment of the court of appeals is reversed and the cause is remanded to that court for determination of the harmfulness of the trial error. It is so ordered.

CLINTON, Judge, concurring.

Common to both civil and criminal actions is a general rule that questions as to place of residence, occupation and "background" of a witness may be asked in order to place before the jury facts from which they may judge his standing and weight to be given to his testimony. *Williams v. State*, 604 S.W.2d 146, 149 (Tex. Cr.App.1980); *Carrillo v. State*, 566 S.W.2d 902, 916 (Tex.Cr.App.1978); *Elam v. State*, 518 S.W.2d 367, 369 (Tex.Cr.App. 1975); 37 Tex.Jur.3d 32–33, Evidence § 666. But that rule contemplates that such questions are part of a "preliminary inquiry" directed to a witness called by the party asking the questions. *Williams v. State*, supra; *Carrillo v. State*, supra; *Elam v. State*, supra; 37 Tex.Jur.3d, supra. They may even be leading in form, for they are but preliminary or introductory matters. Ray, Law of Evidence (Third Edition) § 576, 1 Texas Practice 533.

When the exercise is done on crossexamining a witness for the adverse party, however, questions about occupation or business serve a different intent and purpose: to attack the credibility of that witness. Where the effort is to discredit a witness on account of the nature of business or occupation, propriety of such a question is not determined by the balancing test suggested in the majority opinion. It is not a matter of whether probative value of knowledge of the business or occupation of a witness outweighs its prejudicial effect. The test is simply the form of the question put to the witness. A proper question is: What is your business or occupation? An improper question is one that asks if the witness is not engaged in some particular discreditable business or occupa-

tion. 37 Tex.Jur.3d 181, Evidence § 748; 25 Tex.Jur.3d 50, Criminal Law § 3336. Especially in criminal actions, a witness "may not be asked if he was in a specific business, *where such business is unlawful*," *Ray*, op. cit. § 657, 1 Texas Practice 586.[1]

In the instant case the question posed by the prosecutor is: "Isn't it true, Mrs. Cravens, that you have worked as a common prostitute?" It is an improper question because the inquiry is directed to a particular discreditable business or occupation that is unlawful. See authorities cited in *Ray*, supra, § 657, n. 56, 1 Texas Practice 586.[2]

The contention advanced by appellant to the Court of Criminal Appeals was that the trial court erred in allowing improper impeachment of Cravens. The court of appeals rejected that contention with this:

> "It is well established that a witness may be asked on cross-examination if she is a common prostitute. *Sanford v. State*, 46 S.W.2d 307 (Tex.Crim.App. 1932); *Feather v. State*, 333 S.W.2d 851, 853–4 (Tex.Crim.App.1960).
>
> In *Feather*, the court expressly held that a witness may be asked upon cross-examination if she is a common prostitute, where the question is asked in good faith and an affirmative answer is expected. The record shows that Mrs. Cravens had been arrested for prostitution, and that the prosecutor stayed within the proper impeachment guidelines. Appellant's third ground of error is overruled."

*Cravens v. State*, 663 S.W.2d 668, 673–674 (Tex.App.—Houston [1st] 1983).

Thus implicated is another general rule of impeachment: that a crossexaminer may ask an adverse witness "any question that tends to impair the force of his testimony, by discrediting him, *notwithstanding that the question also tends to degrade the witness*," 37 Tex.Jur.3d 162, Evidence

---

**1.** All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

**2.** Had the question been "Mrs. Cravens, what is your occupation?" and she had answered "common prostitute," we would be confronted with a different problem—one we need not address today.

§ 737. That which the court of appeals found to be "well established" is derived from such rule, but the most recent case it cited in support is *Feather,* supra. One digest, 51 West's Texas Digest 2nd, "Witnesses" § 344(2), indicates there has not been an opinion on the point since then, and Shepard's Texas Citations shows that *Feather* has not been cited for that proposition until *Mendieta v. State,* 659 S.W.2d 489, 491 (Tex.App.—Fort Worth 1983), pending on grant of review, and by the court below in the instant cause.

In *Stayton v. State,* 32 Tex.Cr.R. 33, 22 S.W. 38 (1893), the accused sought to prove through crossexamining a witness for the prosecution that she "had no legitimate occupation, was a common prostitute, and made her living in that way;" the State objected and the testimony was excluded. Writing for the Court, Judge Davidson upheld that ruling because relevancy of the proposed testimony was "not apparent" in that the bill of exception did not state the object or purpose to be attained, but on the face of what was presented succinctly stated:

> "It could not be used solely for the purpose of disgracing the witness in the eyes of the jury. It was not impeaching testimony."

Under circumstances prescribed by every code of criminal procedure, from article O.C. 688 through Article 38.28, a party has been allowed to attack testimony of his own witness in any manner except showing "bad character." However, until Article 38.29, the same codes were "silent as to methods by which one may attack the credibility of a witness offered by the opposing party," referring the courts instead to "the rules of evidence known to the common law

for guidance." *Carroll v. State,* 32 Tex. Cr.R. 431, 24 S.W. 100 (1893). See O.C. 638 and its successors through Article 38.01, V.A.C.C.P.[3]

In *Carroll v. State,* supra, the Court examined common law on "a subject of much opposition and discussion; that is, whether a witness can be compelled to answer a question degrading him, collateral to the main issue, but relevant to his credit," and found "the authorities cannot be reconciled." In that circumstance the Court stated:

> "We may, therefore, follow the authorities whose reasoning appeals strongest to our judgment, and adopt the rule which tends to elucidate the truth, which is the object of all rules of evidence." 24 S.W. at 100–101.

In the particular class of "impeachment" at issue here, taken from an English digest of law of evidence, the rule opted for is in essence that upon crossexamination a witness may be asked questions that tend "to shake his credit by injuring his character," and may be compelled to answer "however irrelevant to the facts in issue, and however disgraceful the answer may be to himself, except where the answer might expose him to a criminal charge." *Ibid.* Thus, the Court concluded that there was no error in allowing the State to prove from a witness testifying for accused that the witness was then under indictment for theft. *Id.,* at 102.[4]

Building on *Brittain v. State,* 36 Tex. Cr.R. 406, 37 S.W. 758 (1896), which in turns stands on *Carroll,* supra, in this State the case which first approved the kind of "impeachment" in question is *McCray v. State,* 38 Tex.Cr.R. 609, 44 S.W.

---

**3.** Article 38.01 provides:

> "The rules of evidence known to the common law of England, both in civil and criminal cases, shall govern in the trial of criminal actions in this State, except where they are in conflict with the provisions of this Code or of some other statute of the State."

**4.** Noting the Supreme Court of Texas had said in *Boon v. Weather's Adm'r,* 23 Tex. 675, 684 (1859), that one of vicious character "may still preserve the priceless virtue of truth, though

every other virtue has gone," the Court declared that proposition so against "the teaching of human experience ... as should require the fact to be affirmatively shown." Its own view was that since "[a]mong the dissolute and degraded, we do not naturally seek or expect to find this best characteristic of manhood[, w]ithout proof to the contrary, a jury may fairly assume that from immoral and criminal character truth has fled, with other virtues." 24 S.W. at 101.

170 (1898). Reasons making it the rule were given by Judge Henderson, *viz:*

"In common experience, it is known that persons who are so morally degraded as to ply their vocation as common prostitutes are not on a plane with the mass of people who follow legitimate and honorable vocations, in the matter of integrity. As a general rule, they are no more capable of telling the truth than one who has been convicted of a felony, or of some misdemeanor involving moral turpitude, and they are no more worthy of belief than such a one; and we see no good reason, when a witness is tendered by either party, and testifies as to some material issue in the case, why it should be [sic] permitted, on cross-examination, to prove he follows some illegal or disreputable vocation for a living. As for that matter, we think it is within the sound discretion of the court, always, on the crossexamination of a witness, to permit to be shown the calling or business followed by such witness, his residence, etc. [Excerpt from *Wilbur v. Flood*, 16 Mich. 40-43 (cited in Thomp. Trials, p. 404) omitted.]"

*Id.*, 44 S.W. at 171.[5] Permission was limited, however, to terms of the grant, for the Court added:

"While we agree to the rule that a witness on crossexamination can be interrogated as to matters which involve moral turpitude, either on account of conviction for crime, or on account of some avocation, yet we would not be understood as holding that a witness, on such cross-examination can be contradicted or impeached in regard to such matters, nor that other witnesses may be called originally to prove such matters against a witness. As stated by the authorities, this would involve a trial of collateral issues, and would often prove interminable. And we hold that the court did not err in excluding the witnesses called to prove that the state's witnesses were common prostitutes."

*Id.*, 44 S.W. at 172.

Though the Court did not then expressly say so, it would follow that "the party asking the question is bound by the answer given." *Sanford v. State*, 120 Tex.Cr.R. 249, 46 S.W.2d 307, 308 (1932). Without citing any authority for support, in *Feather v. State*, supra, the Court added a further condition—"only where the question is asked in good faith and an affirmative answer is expected," *id.*, at 854. So, there the matter stood in 1960—and stands today.

Today the majority undertakes a reanalysis, resorts to a "balancing test" and concludes that on the issue of credibility of a witness "whatever probative value knowledge that the witness is a common prostitute has is outweighed by the legislatively mandated prohibition against impeachment by prior acts of misconduct." The plain connotation in the precise question the prosecutor posed to Mrs. Cravens is that she had committed but had not been convicted of prior criminal offenses of prostitution, denounced by V.T.C.A. Penal Code, § 43.02(a). Earlier for purposes of impeachment that fact could be shown by introducing relevant charging instruments. *Hogue v. State*, 155 Tex.Cr.R. 310, 234 S.W.2d 687, 689 (1950); *Carroll v. State*, supra. But more than thirty years ago, and perhaps in the wake of *Hogue*, supra, the Legislature limited that practice to instances of a final conviction, suspended sentence or unexpired probation. See Acts 1951, 52nd Leg., ch. 458, p. 814. Those limitations were carried forward in 1965 through Article 38.29, V.A.C.C.P. Thus, neither a "balancing" nor any other kind of

---

**5.** Though what has been quoted above and the excerpt would later be relied on to find no error in allowing the State to ask on crossexamination of a witness who had said she was living with her three children, whether she had ever been married, *Mobley v. State*, 89 Tex.Cr.R. 646, 232 S.W. 531, 534, 535 (1921), the Court came to understand that asking a female witness on crossexamination if she is not a common prostitute is permissible "upon the ground that the history, occupation, etc. of a witness are always legitimate subjects of investigation. Underhill's Cr. Evidence (3d Ed.) § 387." *Yeager v. State*, 96 Tex.Cr.R. 124, 256 S.W. 914, 915 (1923).

test is needed to determine whether to enforce a clear legislative prohibition.

Nor is there any indication that in allowing the question the trial judge applied any such "balancing test." When asked the purpose of his proffer the prosecuting attorney replied, "Impeachment. To impeach this witness's character showing moral turpitude." The court promptly overruled the objection. Yet, ordinarily general bad moral character is not provable to impeach a witness. *Shannon v. State,* 567 S.W.2d 510, 514 (Tex.Cr.App.1978); *Ray,* op cit, § 645, 1 Texas Practice 572.[6] Nor may such an inquiry be addressed to a witness for purposes of impeachment. *Leal v. State,* 614 S.W.2d 835, 837–838 and n. 3 (Tex.Cr.App.1981). *Ray,* op cit, § 647, 1 Texas Practice 573–574. The "only exception" is the question of a female witness on crossexamination as whether she is a common prostitute, and even then the questioner is bound by her answer. *Id,* n. 7.

The decision of the Court relied on by the prosecutor and the trial judge in this cause, *Sanford v. State,* 120 Tex.Cr.R. 249, 46 S.W.2d 307 (1932), correctly found:

> "It has long been the rule *in this court* that a witness may be asked on cross-examination is she is a common prostitute, and that the party asking the question is bound by the answer given, and cannot call other witnesses to impeach her testimony or disprove her answer. [Citing *McCray v. State,* supra, and a host of its progeny.]"

However, as demonstrated *ante, McCray* goes back to *Carroll v. State,* supra, and the perception of the *Carroll* Court of "the teaching of human experience" required it to dispute the leading opinion of the Supreme Court of Texas in *Boon v. Weather's Adm'r,* supra, at 678 ff., in order to opt for a common law rule which led to its conclusion that there was no error in allowing the State to prove from a defense witness that he was then under indictment for theft.

That the conclusion has since been rejected by legislative prohibitions in predecessors to Article 38.29, supra, strongly suggests that the rule itself was rejected as well.

Certainly the primary rationale espoused by the *McCray* opinion for extending the common law rule fashioned by *Carroll* is not valid in any other context. What was considered by judges before the turn of the century as "common experience" is not necessarily a verity today. Without some fresh indicia of support for the former proposition, it is an assault upon personal dignity of a witness giving testimonial evidence under oath to "shake his credit by injuring his character" through prying questions about sexual behavior, conduct or activities which, though deemed offensive by some, have not yet been prosecuted to final conviction. *Randolph v. State,* 499 S.W.2d 311, 313 (Tex.Cr.App.1973); see *Brown v. State,* 168 Tex.Cr.R. 67, 323 S.W.2d 954, 956–957 (1959) and *Thrash v. State,* 482 S.W.2d 213, 214 (Tex.Cr.App. 1972).

The courtroom is not the place to stage a play that may be moralistic only in the eye of a beholder. *McCray* is an anachronism; its force and effect have evaporated in time.

For reasons given I concur in the judgment of the Court.

TEAGUE, J., joins.

---

6. "[T]hat a lack of veracity does not so consistently coincide with a bad general character, as to make proof of bad general morals persuasive of bad veracity ... appears to be the soundest view and in this country, the great majority of jurisdictions, including Texas, exclude evidence of general moral character."