## JACK O'NEAL v. THE STATE.

### No. 10413.   Delivered October 5, 1927.

### Rehearing denied May 2, 1928.

**1.—Rape—Accomplice Testimony—Properly Excluded.**

Where, on a trial for rape, appellant tendered as witnesses in his behalf one Gillaspy and one Bailey, who were not permitted to testify, for the reason that said witnesses were indicted for complicity in the same offense here charged against the appellant. Under the facts presented in this record the objection to the testimony of these two witnesses was properly sustained, under Art. 711 of our Code of Criminal Procedure. See Day v. State, 27 Tex. Crim. App. 144, and other cases cited in original opinion.

**2.—Same—Continued.**

As said in the case of Jones v. State, 85 Tex. Crim. Rep. 542: "The disqualifying fact is that the witness is charged with the commission of the same offense as is the person on trial, and that it is the fact of such charge which, under the statute, renders such witness incompetent for the defense. Distinguishing Secker v. State, 28 Tex. Crim. Rep. 479, and other cases cited in original opinion.

**3.—Same—Requested Charge—Covered by Main Charge—Properly Refused.**

Where appellant, on a trial for rape, requested a special charge on the issue of consent, and this issue had been properly submitted in the main charge, there was no error in refusing the requested instruction.

#### ON REHEARING.

**4.—Same—Evidence—Of Accomplice Witnesses—Properly Excluded.**

Where, on a trial for rape, the facts disclosed that appellant and two other young men, Raymond Gillaspy and John Bailey, took prosecutrix, Gladys Spivey and her companion, Virginia Rasberry, out to a lonely spot in the country at night in an automobile, and that the three men acting together, and in concert, assaulted both of the young girls, the appellant and Bailey also succeeding in ravishing Gladys Spivey. All three men were indicted for the offense of rape on Gladys Spivey, and upon the trial of appellant the court very properly refused to permit appellant to use his two companions as witnesses in his behalf.

**5.—Same—Evidence—Of Conspiracy—Rule Stated.**

A conspiracy may be proved by circumstances, and it is generally necessary to do so. "Any person who advises or agrees to the commission of an offense, and who is present when the same is committed, is a principal, whether he aid or not in the illegal act." See Art. 66, C. C. P.; Wharton's Crim. Ev., Vol. 2, Sec. 888; Underhill's Crim. Ev., Sec. 491; Hays v. State, 90 Tex. Crim. Rep. 192; Art. 69, P. C., 1925.

**6.—Same—Continued.**

The fact that Raymond Gillaspy did not in his person have carnal knowledge of prosecutrix, Gladys Spivey, is not determinative of his guilt of rape. If, under the facts and circumstances, he was a principal offender

within the meaning of either of the statutes mentioned, his culpability and that of appellant was upon the same footing. See Campbell v. State, 63 Tex. Crim. Rep. 595; Dodd v. State, 83 Tex. Crim. Rep. 160. Also see Branch's Ann. Tex. P. C., Sec. 576.

#### 7.—Same—Continued.

Art. 82, P. C., 1925, provides: "Persons charged as principals, accomplices or accessories, whether in the same or different indictment, cannot be introduced as witnesses for one another, but they may claim a severance, and if one or more be acquitted they may testify in behalf of others. Also see Arts. 676 and 712, C. C. P. Distinguishing Williams v. State, 148 S. W. 168, and other cases cited on opinion on rehearing.

#### 8.—Same—Continued.

To disqualify a witness from testifying under Arts. 82 and 711, supra, the witness must be under indictment for the same "criminal act" as the accused on trial at the time the co-indictee is offered as a witness. See Cotton v. State, 244 S. W. 1027, and Clark v. State, 81 Tex. Crim. Rep. 157.

Appeal from the Criminal District Court of Harris County. Tried below before the Hon. W. G. Love, Judge.

Appeal from a conviction for rape, penalty five years in the penitentiary.

The opinion states the case.

*Heidingsfelder, Kahn & Branch* of Houston, for appellant.

*Sam D. Stinson,* State's Attorney, and *Robert M. Lyles,* Assistant State's Attorney, for the State.

LATTIMORE, JUDGE.—Conviction for rape, punishment five years in the penitentiary.

Bills of exception Nos. 4, 5 and 6 present complaint of the refusal, respectively, to permit Raymond Gillaspy and John Bailey to testify for the defense, and to instruct the jury or permit them to be told that the defense had offered said parties as witnesses. The state's objection to the testimony of Gillaspy and Bailey was that they were indicted for complicity in the same offense here charged against this appellant. The objection was sustained upon the theory that Art. 711 of our Code of Criminal Procedure forbids the introduction as witnesses for each other of persons charged as principals, accomplices or accessories, whether in the same or different indictments, to the same offense. The decisions of this court have interpreted said statute as meaning that the offered witness, to be incompetent, must be indicted as a principal, an accomplice or acces-

sory to the identical criminal offense charged against the
accused on trial.   Day v. State, 27 Tex. Crim. App. 144; Griffin
v. State, 43 Tex. Crim. Rep. 428; Thomas v. State, 66 Tex.
Crim. Rep. 326; West v. State, 98 Tex. Crim. Rep. 653; Smith
v. State, 99 Tex. Crim. Rep. 203.   Before the defense offered
the testimony of said two witnesses in the case before us, the
state had showed that both of them were indicted for rape
upon the prosecutrix herein on the same date as is charged
herein against appellant.   The testimony before the court other-
wise showed that Gillaspy, Bailey and appellant took two young
girls, one of whom was prosecutrix, from their homes at night
upon the pretense of taking them to a picture show, but instead
the girls were taken to a dark and lonely road.   When they
left home Gillaspy told prosecutrix they were going to take
appellant to Wolf's dance hall and were then coming back to
the picture show, but they did not so take appellant, nor did
they at any time go near Wolf's dance hall or any picture show.
When the car in which they were, stopped on said road at the
scene of the alleged outrage, appellant got out upon some pre-
text and walked away, leaving prosecutrix and her girl friend
with Bailey and Gillaspy.   The latter at once attacked prosecu-
trix, who pushed him away and jumped out of the car.   He
jumped out after her and began trying to put his arms around
her.   She got back in the car with her friend and Gillaspy
followed her.   She got up in an effort to get on the other seat,
and he tried to pull her down in his lap, but she got in her
friend's lap.   Gillaspy then attacked the other girl, but pres-
ently got out of the car.   Appellant, who had returned, told
prosecutrix he wanted to talk to her and did not want Gillaspy
to hear him because Gillaspy had a gun.   Prosecutrix got out
of the car and appellant took her a short distance.   She heard
her friend scream and started back to the car where the other
girl, Gillaspy and Bailey were.   She said to appellant that she
did not care if Gillaspy killed her she was going back to her.
friend, but appellant told her she was not going to do anything
of the kind and pulled her back.   She got away from him and
went back to where the others were, and got in the car.   Appel-
lant came and pulled her out of the car, over the car door, and
dragged her, in spite of her fighting and kicking and scream-
ing, and without the slightest protestation from either Gillaspy
or Bailey, out aways from the car to a point where, by force,
he had intercourse with her.   After having accomplished this
he let her go back to the car, and told her he was going to
make Gillaspy let her friend alone and stop bothering prosecu-
trix.   Arriving at the car appellant pulled Gillaspy from the

car and they hit each other once or twice, but prosecutrix testified that when they did this they were laughing. Gillaspy then started pulling the other girl out of the car on one side, and Bailey began pulling prosecutrix out of the car on the other side. Appellant told them to let her alone; that prosecutrix got in the car, but Bailey and Gillaspy pulled her out, and took her, one by the feet and the other by the arms, out past a tree, which she caught hold of and held to with all of her might, but they prized her loose from the tree, threw her to the ground, and Bailey forcibly had intercourse with her, Gillaspy standing near. When Bailey had finished, Gillaspy indicated that it was his time, but she begged and cried and told them she believed she would die, was too weak to walk, and begged them to let her alone. Just before appellant took her and dragged her away from the car and ravished her, the three men had been apart to themselves talking.

We have stated only a part of the facts to make plain the proposition that we have had no difficulty under them in concluding that both Gillaspy and Bailey were incompetent as witnesses for the defense in this case, and that the state has, upon apparently good grounds, indicted both of them, and might, upon this testimony, seek a conviction of both, for complicity in the alleged rape here charged against this appellant, and that therefore under said statute neither of the bills of exception under consideration shows any error. As said in Jones v. State, 85 Tex. Crim. Rep. 542, the disqualifying fact is that the witness is charged with the commission of the same offense as is the person on trial, and that it is the fact of such charge which under the statute renders such witness incompetent for the defense. We find nothing in any of the other cases cited by appellant, viz.: Secker v. State, 28 Tex. Crim. App. 479; Williams v. State, 146 S. W. 168; Clayton v. State, 78 Tex. Crim. Rep. 158; Welch v. State, 227 S. W. 301, and Cotton v. State, 244 S. W. 1027, which in anywise is inconsistent with the opinion just expressed. Upon no theory can we perceive any right of appellant to have the jury apprised of the fact that he had offered these incompetent witnesses.

Complaint is made of the refusal of a special charge on the issue of consent. The trial judge in his main charge gave substantially the same instruction as follows:

"In order to warrant a conviction in this case it must appear from the evidence, beyond a reasonable doubt, that the said Gladys Spivey used every reasonable exertion and means of resistance within her power under the circumstances shown by

the evidence, to prevent such act of carnal knowledge, if any; and if you have a reasonable doubt as to whether the said Gladys Spivey did use every such reasonable exertion and means of resistance within her power, under the circumstances, you will give the defendant the benefit of such doubt, and acquit him."

This disposes of the complaints appearing on behalf of the appellant.

Finding no error in the record, the judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

MORROW, Presiding Judge.—In the indictment filed January 27, 1926, it was charged that Jack O'Neal, on the 10th day of January, 1926, in Harris County, ravished Gladys Spivey. On the trial, the appellant tendered as a witness in his behalf Raymond Gillaspy. To the competency of Gillaspy as a witness in behalf of the appellant, the state interposed an objection on the ground that Gillaspy was charged by indictment with the same offense, and in support thereof introduced an indictment by the grand jury of Harris County charging that *in that county on the 10th day of January, 1926, Raymond Gillaspy ravished the said Glays Spivey.* After a preliminary investigation the court sustained the state's objection. The major part of the statement of the evidence given on the trial is embraced in the bill of exceptions and in the bill reference is made to the statement of facts.

From the testimony of Gladys Spivey, the following synopsis is taken: On the 10th of January she spent the afternoon at the home of Virginia Rasberry, a girl friend, and there that night between seven and eight o'clock saw Jack O'Neal, Raymond Gillaspy and John Bailey. She had no previous acquaintance with O'Neal and Gillaspy, but had known Bailey a few days. She was invited by them to attend a show and requested that she be taken to her home in order that she might obtain her mother's permission. Accordingly, Gladys Spivey and Virginia Rasberry entered an automobile possessed by the three young men mentioned. The witness, after obtaining permission from her mother to go to the show, re-entered the car, which had been in waiting for her. O'Neal had some musical instruments. Gillaspy stated that he wanted to take O'Neal to Wolf's dance hall and leave him there. Instead of going to Wolf's dance hall, or to the show, the car was driven out into the country and there stopped. Immediately after the car was stopped, Raymond Gillaspy seized Gladys and kissed her. She

resented and resisted the assault. Gillaspy persisted and endeavored to take her into his lap. O'Neal, at the time, had gotten out of the car and was out of sight. He returned and Gillaspy attacked Virginia Rasberry. O'Neal expressed a wish to talk to Gladys, who had gotten out of the car. The witness told O'Neal that she was a good girl and he said that she had better be careful, that Gillaspy had a gun. She told O'Neal that she had never done anything; that both she and her friend were straight. He said that "he was going to do something to somebody." She at the time heard the screams of Virginia and said she was going to her even if she got killed. O'Neal told her that she would not, and took hold of her and she screamed. At the time they were some little distance from the car. During the assault by O'Neal, who was endeavoring to force her, Bailey came and said: "Why don't you leave the little girl alone." O'Neal said: "You had better get away from here, I will knock your head off." The witness released herself and took hold of Bailey. O'Neal seized her and she held to Bailey. She was half-way dragged back to the car. She entered the front seat and O'Neal followed her. He took her and forced her across the door. She protested and fought. He took her out of the car. She was fighting him all the time. Gillaspy and Virginia were on the back seat of the car, and Bailey was standing by it. Neither made any effort to aid or defend against the assault by O'Neal. While she was fighting and kicking, she was struck by O'Neal and dragged some distance from the car, and against her utmost efforts was ravished by O'Neal, after which he said that he was going to make Gillaspy let Virginia alone as she was but sixteen years of age. She heard O'Neal say: "Don't you shoot; don't you shoot." He seemed to be in good humor. He and Gillaspy hit each other once or twice, but they were laughing. Gladys got on the back seat and begged that Gillaspy cease his attack upon Virginia. He persisted, however, and finally pulled Virginia out of the car, and she pulled O'Neal out with her. Bailey at the time was taking Gladys out of the car. She was screaming and begging O'Neal for assistance. Virginia came back to the car and begged Gillaspy "out of it." Then the three boys returned to the car and claimed that they desired to get tools from it because of a flat tire. She declined and was pulled out by Bailey and Gillaspy, one catching her arms and the other catching her feet. As she was dragged from the car, she caught against a tree. Gillaspy placed a gun in her side and threatened to shoot her if she did not let go of the tree. She

told him to shoot.   At that time O'Neal was at the car with Virginia.   She was at a distance from the car so that they could not be seen.   She was begging that they desist, and even prayed.   Bailey pried her hands loose, and with the aid of Gillaspy threw her upon the ground and had intercourse with her. Gillaspy then indicated a like intention and the witness told him she would die and continued to beg that he desist.   Gillaspy finally desisted.   She was taken to her home, where she reported the assault to her father.

Virginia Rasberry was sixteen years of age.   From her testimony it appears that after the car was stopped, Gillaspy grabbed and kissed Gladys; that she protested and Gillaspy then attacked the witness.   O'Neal took Gladys out of the car, and the witness heard her scream a number of times.   Gillaspy got out of the car and Bailey remained in it.   The witness fainted and she had to be helped back in the car.   When Gladys returned to the car the three boys went out.   They seemed to be arguing and fighting.   O'Neal came back and said he was trying to help the girls.   The boys claimed that they needed a pump, and when Gladys refused to get out of the car she was pulled out by Bailey and Gillaspy.   She fought, but they forced her.   They threatened to shoot and she told them to do so.   O'Neal at the time was on the back seat of the car with Virginia, and in her language, he wanted her to go ahead, but she declined.   She could not quote his words as she was too excited; that he held her hands.   Bailey returned and showed blood on his trousers. Gladys was holding to a tree and could not walk.   O'Neal picked her up and put her in the car.   Gillaspy returned and pulled the witness out and tried to attack her, and got on top of her and tried to pull up her bloomers and she continued to fight him.   O'Neal did nothing to prevent him or aid the witness. They were right by the car.   Bailey was standing by and said nothing.   Gillaspy got the witness down on her back and took out his privates but finally let her alone.   She was too weak to do anything.

According to H. A. Spivey, father of Gladys, when she returned, she was hysterical and on the verge of fainting.   He called a doctor.   Upon going to his front door he saw a large touring car standing in front of the house.

Mrs. Spivey, mother of Gladys, testified that she was awakened during the night by her daughter, who was very excited and nervous; that her clothes were bloody.

A doctor described the condition of Gladys.   He said that both her underclothing and top clothing were torn; that there was

blood upon her privates, on her thigh, around her privates, and upon her legs. It was scattered over her person in various places. She was in a very nervous and hysterical state of mind, as though she had been subjected to some intense, profound shock; her skin was cold, her pulse was rapid, and her color was pale. She had the appearance of quite a lot of exhaustion as though she had been subjected to some strain that would exhaust her. Her vagina was bruised; the tissues were swollen. The hymen was torn and hanging in shreds. There was a discoloration inside of the vagina. The examination was made soon after midnight of the night of the occurrence.

Appellant introduced several witnesses who testified to his good reputation as a law-abiding man. He testified in his own behalf that he was twenty years of age, and described the happenings on the night of the alleged offense. He denied any assault and said that he was with the party on the night in question; that he went at the invitation of one of his boy companions in a car which belonged to the father of Gillaspy. He took his musical instrument along for the entertainment of the party. He denied any inception of the assault or conspiracy, and said that after the car was stopped he invited the prosecutrix to take a walk; that they walked out from the car and he engaged in sexual intercourse with her consent; that they remained at the place about three hours. He denied that Bailey and Gillaspy took the prosecutrix, Gladys Spivey, away from the car or that they made any attempt to assault Virginia Rasberry. He also denied that they failed to take Virginia home at her request and let her get out in the neighborhood of her home.

A conspiracy may be proved by circumstances, and it is generally necessary to do so. See Wharton's Crim. Ev., Vol. 2, Sec. 888; Underhill's Crim. Ev., Sec. 491; Hays v. State, 90 Tex. Crim. Rep. 192. If there was a mutual agreement to ravish the girls, the boys were principals under Art. 69, P. C., 1925, in which it is declared:

"Any person who advises or agrees to the commission of an offense and who is present when the same is committed is a principal whether he aid or not in the illegal act."

Likewise, they were principals if they acted together under the conditions named in Art. 66, P. C., 1925, which reads as follows:

"When an offense is actually committed by one or more persons, but others are present, and knowing the unlawful intent, aid by acts or encourage by words or gestures, those actually

engaged in the commission of the unlawful act, or who, not being actually present, keep watch so as to prevent the interruption of those engaged in committing the offense, such persons so aiding, encouraging or keeping watch are principal offenders."

The fact that Raymond Gillaspy did not in his person have carnal knowledge of Gladys Spivey, is not determinative of his guilt of the offense of rape. If, under the facts and circumstances, he was a principal offender within the meaning of either or both of the statutes mentioned, his culpability and that of O'Neal were upon the same footing. The fact that in the indictment charging that Gillaspy ravished Gladys Spivey no mention is made therein of O'Neal or of the elements of principal offenders would not prevent the state in the prosecution of Gillaspy from proving, as a basis for the conviction, that the carnal knowledge was that of O'Neal. Under such an indictment, Ruth Campbell, a woman, was convicted of rape upon proof that she aided Luther Hutcherson, a man, in the perpetration of the offense. See Campbell v. State, 63 Tex. Crim. Rep. 595. In Dodd's case, 83 Tex. Crim. Rep. 160, under such an indictment, Dodd was prosecuted as a principal in a rape by Stevenson, and the death penalty was affirmed. In Branch's Ann. Tex. P. C., Sec. 676, it is said:

"A principal offender may be charged directly with the commission of the offense, although it may not have actually been committed by him."

See also Cruit v. State, 41 Texas Rep. 477; Williams v. State, 42 Texas Rep. 393; Bell v. State, 1 Tex. Crim. App. 598.

Art. 82, P. C., 1925, reads thus:

"Persons charged as principals, accomplices or accessories, whether in the same or different indictments, cannot be introduced as witnesses for one another, but they may claim a severance, and if one or more be acquitted they may testify in behalf of the others."

Art. 711, C. C. P., 1925, is the same in substance as the one last quoted, and Art. 712, C. C. P., reads as follows:

"The court may, upon suggestion made, or of its own option, interrogate the person who is offered as a witness, to ascertain whether he is competent to testify, or the competency or incompetency of the witness may be shown by evidence."

As indicated above, and as shown by the bill of exceptions, the judge, upon investigation of the evidence, satisfied himself that Raymond Gillaspy, who was tendered as a witness in behalf of the appellant, was under indictment for the same offense with which the appellant was charged. It is urged in a very forceful

motion for rehearing that in holding the witness disqualified the learned trial judge was wrong. Appellant insists that Gillaspy was not charged with the same *act* with the appellant, in consequence of which the statutes mentioned did not operate to exclude the testimony of Gillaspy. Several cases are cited which, on the original hearing, were examined and held distinguishable. Secker's case, 28 Tex. Crim. App. 479, was a conviction of Secker for abusive language, namely, "You dirty bitch." Mrs. Secker was charged with a like offense committed on the same day, her language being: "You dirty old slut." The court held her evidence improperly excluded, saying:

"The offense charged against the parties were not the same. The words charged against the parties were not identical, and there is nothing identifying the transaction as the same save the name of the injured party and the date of the alleged offenses."

The case of Williams v. State, 148 S. W. 168, was a conviction for playing "craps." It was held that the witness Ballard was not an accomplice, which seems obvious from the facts stated in the opinion. Ballard was not charged with an offense. Therefore the construction of the statutes mentioned above was in no sense involved. In Clayton's case, 78 Tex. Crim. Rep. 158, the conviction was for perjury. One Henderson had been tried in the County Court for gaming. Clayton testified that at the time of the card game Henderson was not present. It was the state's theory that this testimony was false. On his own trial for perjury, appellant offered the testimony of witnesses who were present and took part in the game and who swore that Henderson was not present. These witnesses were indicted for perjury, but there was no testimony that they and the appellant were parties to a conspiracy to commit perjury. They were held competent witnesses. The act to which they gave testimony was entirely different from that upon which the trial was had. Welch's case, 227 S. W. 301, is in substance the same as Clayton's case, supra. In Cotton's case, 244 S. W. 1027, Herbert Cotton was convicted of manslaughter growing out of the homicide in which George Green lost his life. About the same time that George Green was killed, but not by the same act, Tom Green was wounded. Herbert and Ira Cotton were indicted for the murder of George Green and for an assault with intent to murder Tom Green. At the time of the trial of Herbert, Ira Cotton, having been acquitted of the charge of murder, was held, under the statutes which we have quoted above (Arts. 82 and 77), a competent witness. This court

rejected the theory that under Art. 651, C. C. P., 1925, he would be incompetent by reason of his being under indictment for assault with intent to murder, that being a different offense. The operation of the statute last mentioned (Art. 651) as distinguishing "the same transaction" from the same act, is discussed at some length in the opinion, and also in Clark v. State, 81 Tex. Crim. Rep. 157. The conclusion reached by this court and applied in the Cotton case and the Clark case, supra, and which is now reasserted, was that to disqualify a witness under Arts. 82 and 711, supra, the witness must be under indictment for the "same criminal act" as the accused on trial at the time the co-indictee is offered as a witness.

Upon the state's evidence, the jury would have been authorized to decide that Gladys Spivey was raped twice; first, by forced carnal knowledge with Jack O'Neal; and second, by forced carnal knowledge with John Bailey; that in each of the rapes, Jack O'Neal, John Bailey and Raymond Gillaspy were principal offenders. Under the indictment charging Jack O'Neal with the rape of Gladys Spivey, the state was privileged to rely upon the evidence showing carnal knowledge by Jack O'Neal or the carnal knowledge by John Bailey. Likewise, in the indictment against Raymond Gillaspy, under the averments contained therein, as set out, the prosecution could have relied upon the carnal knowledge of Gladys Spivey by either Jack O'Neal or John Bailey. In the trial of the case, as manifested by the charge to the jury, there was an election to rely for the conviction of Jack O'Neal upon the act in which he had carnal knowledge of Gladys Spivey. From what has been said it follows that the indictment against Raymond Gillaspy was such as to charge him as a principal offender in the rape of Gladys Spivey by Jack O'Neal, from which it follows that Gillaspy was not a competent witness for Jack O'Neal in the trial of his case. It may be said, and perhaps it is correct to say, that the state having elected to try Jack O'Neal for his personal carnal knowledge of prosecutrix, and having insisted upon its objection to the competency of Raymond Gillaspy as a witness for O'Neal, it would be precluded from prosecuting Gillaspy under the indictment against him introduced in evidence, as a principal in the rape of Gladys Spivey by John Bailey, but that such prosecution, if any, should be upon another indictment. The learned trial judge, after full investigation of the facts as authorized by Art. 712, C. C. P., supra, decided that Gillaspy was disqualified to testify for the appellant, and the opinion is expressed that in so concluding no abuse of discretion was exhibited.

The motion for rehearing is overruled.      *Overruled.*