## J. W. CADLE V. THE STATE.

No. 14929.   Delivered May 11, 1932.
Rehearing Denied February 15, 1933.
Reported in 57 S. W. (2d) 147.

596

MORROW, Presiding Judge, dissenting.

The opinion states the case.

*A. R. Stout,* of Ennis, and *Tom Whipple, John Hatter,* and *Will Hancock,* all of Waxahachie, for appellant.

*Archie D. Gray,* Crim. District Attorney of Waxahachie, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for robbery; punishment five years in the penitentiary.

This is a companion case to Cause No. 14489, Jim Everett v. State, opinion handed down March 30, 1932, and Cause No. 15001, Batcheler v. State, now pending before this court. The facts from the state's standpoint are in the main very much like those in the case of Everett v. State, referred to. We see no need for a recital of the facts testified to by the state witnesses further than to say that same show that on the night of January 28, 1931, this appellant and one Jim Everett came upon a party of men and commanded them to "Stick 'em up." The testimony shows that one of the men had and exhibited a pistol. The parties so ordered held up their hands, and while in this position they were searched by a man implicated in the supposed holdup, who afterwards turned state's evidence and testified for the state, who got from one of the men a small amount of money and from the other one a larger sum.

Appellant has brought forward twenty-two bills of exception, each of which has been examined in the light of the able brief and citation of numerous authorities by appellant's attorneys. Reviewing the complaints made as presented and argued in appellant's brief, the first matter discussed is the supposed error of the charge, as raised by exceptions thereto which seem unintelligible, but refers to the failure of the court to tell the jury that, if appellant was present by invitation of the officer, etc. We have examined carefully this first exception, and find nothing tangible in it.

The second exception to the charge was for its failure to instruct the jury that, if appellant was present at the robbery, and money was taken from McGowan by Stacey Childress "without his knowledge and consent he would not be guilty as charged in the indictment." We have tried to bring ourselves to understand this exception without success. We cannot tell whether the phrase "without his knowledge and consent" applies to appellant Cadle or witness McGowan. However, we are of opinion that, if it referred to appellant Cadle, the exception would be unavailing because covered by the main charge which told the jury that they could not convict appellant unless they found and believed from the evidence beyond a reasonable doubt that he agreed to the commission of the offense committed by Childress (the party making the search). We find nothing supporting the theory that appellant was holding the pistol on the parties for the purpose of letting Childress search them for

guns, and nothing else. The evidence sems to plainly show that pursuant to an agreement entered into between appellant and others to hold up said parties, appellant and Everett held them up, and Childress went through their clothes and got a small amount of money from one of the men, and $95 in money from another. Appellant took the stand as a witness in his own behalf, and admitted being at the place in question for the purpose, as he claimed, of helping others detect and catch parties bringing liquor down the road, but he emphatically denied that he and Everett held anybody up, or that Childress went through their clothes and took anything from them in his presence, or by his agreement or connivance. In this connection appellant argues the error of the refusal of his special charges. We see no necessity for discussing same at any length. There was no issue made as to the legal right of an officer to deputize a citizen to assist him in making an arrest of parties for violations of the law. In another one of said special charges appellant sought to have the jury told that he could not introduce in his behalf certain parties who were jointly indicted with him for complicity in this offense. This was correctly refused as decided in O'Neal v. State, 109 Texas Crim. Rep., 486, 5 S. W. (2d) 521. Nor do we see any necessity for giving special charge No. 1, which was in substance that, if the jury believed that this appellant, acting with his codefendants, did not intend to take from Rose, McGowan and Adams money or things of value, at the time and place mentioned, and that they caused Childress to search the said parties for guns only, and that Childress, unknown to them, took from McGowan money without the knowledge of appellant, they should acquit. Appellant has gone to great pains in collating the authorities and making an extended argument in support of the giving of said special charge, but we confess our inability to see the application of the authorities or correctness of the argument. Childress testified that he had stopped the parties who were robbed, on the road, and that Everett and appellant came up, appellant having a pistol and Everett a flashlight, and that they made the parties hold their hands up, and that he (Childress) went through their pockets and got money off of McGowan and gave it to Batcheler. On cross-examination he said that he was not certain whether Everett and appellant knew that he got any money out of McGowan's pocket, but affirmed that they knew that he got 55 cents out of Rose's pocket, and later dropped it back in his pocket and told him that he was a cheap s— of a b—, or something like that. We fail to find where he said that there was

any understanding or belief on the part of appellant that he was only searching the parties for guns.

Appellant's second and third propositions relate to statements of the prosecuting attorney, made in the presence of the jury as reflected by bills of exception Nos. 9, 12 and 13. We regard the statements made by the prosecuting attorney as uncalled for and unnecessary, and as being of a character that ought to be avoided, but same put before the jury no new evidence, nor do we believe them capable of influencing or affecting the jury's consideration of the question of the guilt of the accused. The jury rendered a verdict giving appellant the lowest penalty. In bill of exception No. 9 it is set up that, while appellant's attorneys were cross-examining a state witness about some conversation between said witness and another party about a still that the other party had been running for witness, the state's attorney said in the presence and hearing of the jury: "That is all a bunch of bosh," and later again said "It is all bosh and slush," and again while appellant's attorney's were taking their bills, the state's attorney said "Take thirty bills." The matter being inquired about was apparently very remote to the question of the robbery. Bill of exception No. 12 shows that during the cross-examination of the same witness he was shown a check relating to the purchase of some whisky, involving an illegal transaction apparently, not shedding light on the question of the robbery, and the state's attorney objected, saying to the court: "We are not trying him for this check, and they are trying to get all of this slush and slime before the jury, and that is not fair." From bill of exception No. 13 it appears that while the same witness was being cross-examined, he was shown a check, and state's attorney said in the presence and hearing of the jury: "Yes, and I have got some of your clients' signatures in my office." It would seem unnecessary to admonish prosecuting attorneys not to indulge in conduct of the kind evidenced by these bills of exception. In some cases same might require reversal, but in the instant case, and in view of the fact that the lowest penalty was given, and that the matter under discussion, and about which the remarks were made, appears of so little materiality, we would not think the case should be reversed for the making of such statements.

Appellant complains of proof by the state of the acts and declarations of his alleged coconspirator Childress done and said after the alleged robbery. While Childress was on the witness stand, he was vigorously cross-examined by appellant's attorneys, and admitted that he had made various and sundry

statements at other times and places contradictory of those made by him while on the witness stand. The declarations testified to as being made by said witness after the termination of the conspiracy were declarations in consonance with and supporting those made by him on his direct examination as a witness in behalf of the state. Many authorities will be found cited in sections 181, 182 of Mr. Branch's Annotated P. C., supporting the proposition that, where a state witness is attempted to be impeached by showing that he has made statements out of court different from and contradictory to his testimony given on the trial, proof may be admitted showing that he had made other statements similar to those given while on the witness stand. As illustrating what we have said, we find in the cross-examination of state witness Childress that he was asked about a statement made to the county attorney the morning after the holdup, and if he did not tell the county attorney that there was no hijacking out there at all. A little later he was asked if he did not make certain statements to the officers and if he was not under oath when he made the statements to the officers, and if it was not a fact he did not tell the whole truth when he made the statements. He was further asked if he did not testify certain things on the habeas corpus trial of this appellant under oath, and if he did not make certain statements which were read to him which were entirely at variance with statements made while on the witness stand. This furnished a predicate for the admission of testimony as to the statements of the witness which were in consonance with the statements made by him as testified to by witness introduced by the state. It is also complained that, the state having drawn out of appellant while on the witness stand admissions that he had been indicted for other offenses, it was the duty of the court to instruct the jury they could not consider such testimony for other than impeachment purposes. We find no special charge in the record requesting such instruction, and the only thing in the exceptions taken to the charge of the court is that it is stated: "Defendant specially excepts to said charge because same nowhere explained to the jury the purposes for which the impeaching testimony is offered." In this connection the court gave special charge No. 2 which instructed the jury that the impeaching testimony was admitted as to the witnesses Rose, McGowan, Adams, and Noble for the sole and only purpose of aiding them in passing on the credibility of said witnesses and for no other purpose. The exception quoted is so indefinite as to not call the attention of the trial judge to what testimony it

referred. We can not tell from an inspection of the exception to what testimony reference was had. The testimony apparently referred to as obtained from appellant was the fact that he had been indicted for other offenses which consisted, as far as we understand the record, only of his admission that he had been charged with transporting a still over in Freestone county, but there is no showing when this took place, or whether the charge was in the federal court, or whether it was a felony or otherwise. Appellant further testified that no complaint or indictment had been filed against him recently. With reference to the matter over in Freestone county, appellant testified on redirect examination that he paid a fine for having a pistol in his car, and that was about all there was to it.

We think it not necessary to enter into any extended discussion of the right of the court to direct the order of trial as between appellant and his codefendant Batcheler. Appellant filed an application for severance, and Batcheler made a counter affidavit refusing to agree to be tried first, and the court correctly directed that appellant go to trial. It is admitted in this connection that Batcheler has since been tried and convicted.

Complaint of the rejection of testimony sought to be elicited from the state witness Stacey Childress on cross-examination by appellant, if he was not engaged in the business of bootlegging, seems within the rule laid down that a witness can not be impeached by proof of particular transactions. There was no effort made to show that these matters had ever been made the subject of an indictment or arrest for any purpose.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Our discussion of the questions urged in the motion for rehearing must be in the light of the facts as understood from the record. We condense them as much as possible. They are much the same as found in the companion cases of Batchelor v. State, No. 15001, reported in 50 S. W. (2d) 1099, and Everett v. State, No. 14489, in which motion for rehearing is overruled this date. The state's evidence shows the following: Childress went from Waxahachie to Dallas, and under the name of Bill Green made arrangements with parties there to deliver to him five cases of whisky at an underpass on the interurban railroad in Ellis county. Before going to Dallas, he told Cadle of his purpose, and said, if successful, he would telephone Cadle, which he did, and expected Cadle to have a deputy sheriff

with him. Upon Childress' return from Dallas, he was met at the interurban station by Cadle, who had a car belonging to one Williams. Childress got in the Williams car and Cadle got in a car belonging to Batchelor, a deputy sheriff. The three of them went to this underpass, but Cadle and Batchelor stopped their car some two hundred yards south of the underpass toward Waxahachie; before the parties from Dallas arrived with the whisky Everett, accompanied by one Reynolds, arrived at the underpass in Everett's car, and Reynolds reported that Williams had sent for his car. It was turned over to Reynolds, who drove it back to Waxahachie. The Everett car was parked where Childress had formerly parked the Williams car. Everett then went down the road to the car in which Batchelor and Cadle were, Childress alone remaining at the Everett car to give the signal which had been theretofore agreed upon when the parties appeared from Dallas with the whisky. About 8:30 or 9:00 at night J. C. Rose, Alto McGowan, and Spencer Adams appeared in a car coming from Dallas with the whisky which Childress had arranged for. Upon the agreed signal being given by Childress, the car from Dallas was stopped. McGowan got out and was told by Childress to drive on down the road a piece and turn around and come back. When the three parties from Dallas drove on they saw the Batchelor car, and, being suspicious, did not turn at that time, but went on down the road some distance toward Waxahachie, unloaded the whisky at the side of the road, turned and came back, again passing the Batchelor car, and stopped at the car where Childress was waiting. Upon being asked then about the whisky, they reported to Childress that they did not have it. About that time Everett and Cadle came up, Cadle with a pistol, and Everett with a flash-light. Rose, Adams and McGowan were made to put up their hands, and Childress searched their pockets while Cadle held the pistol on them. No money was found on Adams. Fifty-five cents was taken from Rose, and he was told by Childress that he was a "cheap s— of a b—," and the 55 cents given back to him. From McGowan, Childress took $95 in money, after which the three parties were told to "beat it," and they started in their car back toward Dallas. They were followed some distance by Everett and Batchelor. Childress says, after getting the money from McGowan, he went back to Batchelor's car and gave the money to Batchelor, who said he would keep it and they would "split it" later. No witness claims that Batchelor was at the immediate place of the search and robbery. It seems clear from the state's testimony that the

primary purpose of Childress and his companions was to rob McGowan, Rose, and Adams of the whisky. According to Childress' testimony, after Batchelor and Everett pursued the three parties toward Dallas, he and Cadle went back down the road toward Waxahachie, discovered the whisky at the side of the road, and placed it in Batchelor's car and returned to Waxahachie with it. Childress testified to where he put that part of the whisky kept by him, and that he told the officers where it was. Later in the night Rose, Adams, and McGowan returned to Waxahachie and reported to the officers that they had been robbed by Bill Green and other parties. A man by the name of Bill Green was taken by the officers to the county attorney's office at the courthouse, and all three of the men from Dallas said he was not the man who had arranged for the whisky and later, with the others, robbed McGowan. The officers then went to the home of Childress and brought him to the county attorney's office, and he was immediately identified by all three of the parties as the man who had searched them, and who had given the name of Bill Green at the time he made arrangements to have the whisky delivered. Appellant's version of the transaction will be given later in connection with some of the complaints urged by him in his motion for rehearing.

Appellant complains that we did not discuss his bills of exception numbers 15, 16, and 17. While not designated by number, they were discussed in a general way in our opinions on original submission. The record shows that the witness Walters was called by the state in rebuttal. Bill No. 15 complains that said witness was permitted to testify that after Childress made bond and was released from jail, he came to witness' place of business and told witness about the matter of arranging for the delivery of the whisky and about Everett and Cadle using a gun and flash-light and about taking $95 from McGowan. The statement made by Childress to Walters was consistent with the former's testimony given on the trial. The principal objection urged to Walters' testimony was that the state was relying on a conspiracy to which Childress and his companions were parties, and that the declaration made to Walters was in the absence of appellant, and after the consummation of the conspiracy, and that such declaration was therefore inadmissible. Appellant cites many authorities supporting the general rule that proof of acts and declarations of coconspirators done or made in the absence of the party on trial after the commission of the offense, and after the conspiracy is completed, are not admissible against accused. The rule will be found stated

in section 695, Branch's Ann. Tex. P. C., at page 354. There can be no difference of opinion between counsel for appellant and this court with reference to the soundness of the rule stated; therefore it is not necessary to discuss or cite the cases referred to. As we understand the record, Walters' testimony was not offered by the state for the purpose of establishing appellant's guilt, nor as tending to establish a conspiracy. Upon cross-examination of Childress, who had turned state's evidence, he admitted that the next morning after the holdup he had told the county attorney about getting the whisky, but denied that there was any "hijacking" incident to the transaction. He also testified that this part of his statement to the county attorney was not true. Childress further admitted upon cross-examination that upon habeas corpus trial of appellant witness had denied that any robbery occurred, and denied that appellant had used a gun and Everett a flash-light. He also admitted that upon this habeas corpus trial he was asked the question: "There was not any hijacking out there while you were there?" to which the witness admitted that he had answered, "Not while I was there." As well established as the rule regarding declarations of conspirators heretofore mentioned is another rule of evidence that, where a witness is attempted to be impeached by showing that he had made statements different from and contradictory to his testimony delivered on the trial, it is not error to permit the witness to be supported by showing that shortly after the transaction he made statements consistent with his testimony delivered on the trial. It was the application of the latter rule this court had in mind in considering bill of exception 15 at the time our original opinion was prepared. As we understand the record, the evidence of Walters was admissible. Many authorities to support the proposition will be found collated in Branch's Ann. Tex. P. C., sec. 181, at page 110. If appellant was fearful that the testimony of Walters might be appropriated by the jury for an improper purpose, doubtless if the court's attention had been pertinently called thereto he would have given a charge guarding against any such contingency. We find the following exception to the court's charge: "* * * Because the same nowhere explains to the jury purposes for which impeaching testimony is offered."

Said exception does not make any reference to supporting testimony of a witness sought to be impeached. We also find that the court gave special charge number two requested by appellant regarding evidence which had been offered for the purpose of impeaching the state's witnesses Rose, McGowan,

Adams, and Noble. The trial court was justified in the conclusion that this charge which he gave was intended to correct what was regarded by appellant as an omission from the charge pointed out in the exception above quoted. Under the circumstances, we must adhere to the announcement that under the record bill of exception 15 presents no error.

Bill of exception 16 complains of the admission of the testimony of the witness Winterrowd. This witness was not used by the state in developing its case in chief, but was called in rebuttal. Winterrowd was a deputy sheriff. The bill shows that the witness testified that between 12 and 1 o'clock on the night of the alleged robbery he was called to a garage in Waxahachie and there saw Rose, Adams, and McGowan; that they told him three men, one of them being Bill Green, had "hijacked" them; that Green was the only one whose name they knew, but they could identify the others if they saw them; that the witness went to the house of Bill Green and brought him down to the county attorney's office at the courthouse where Rose, Adams, and McGowan were and when they saw Green they said he was not the man. Winterrowd said that a night policeman then spoke up and said he bet that the party they wanted was Childress; that witness then went to Childress' house, and brought him down to the county attorney's office, and that immediately upon his appearance the three men identified him as the man called Green and as the one who had searched them. Winterrowd also testified that, when he went to Childress' home, and directed Childress to get up and put on his clothes Childress said, "What's the matter, somebody hijacked?" He also testified that the next day he talked to Childress at the jail, and Childress told him that he would take him up on the side of the road where the whisky was set out; that he did go up there with Childress and saw a place where there were tracks going from the road over into a muddy ditch, and that there were prints of boxes in the mud; that he then came back to town and found some whisky at a place where Childress said he had put it. Appellant objected to all of this testimony as being hearsay, immaterial, irrelevant and as an effort to bolster the state's own witness by hearsay testimony, and as evidence of statement's made by Childress after the consummation of the conspiracy claimed by the state to have existed. There is no rule better known or which this court is oftener called upon to apply than that a bill of exception is too general to be considered if it includes objections to a number of statements or things set out in the bill, some of which are admis-

sible, and there is nothing in the objection urged to directly challenge or single out the objectionable evidence. The rule will be found stated in section 211, chapter 135, Branch's Ann. Tex. P. C., with many authorities collated in support thereof. Later cases are Dixon v. State, 91 Texas Crim. Rep., 217, 238 S. W., 227; Tracy v. State, 111 Texas Crim. Rep., 160, 12 S. W. (2d) 205. Adverting to the recitals in bill No. 16, the officer unquestionably had a right to testify that he brought Green to the county attorney's office, and that he also brought Childress to the county attorney's office. If the bill had shown a specific objection against Winterrowd undertaking to relate what Rose, Adams, and McGowan had said to him when he found them at the garage it doubtless would have been excluded by the court. Likewise the statement made by Childress to the witness when he first saw Childress at his home, the question there asked by Childress being: "What's the matter, somebody hijacked?" This matter was held improperly admitted in Batchelor's case, supra, and would be so held in this case if objection to it had been singled out and segregated from other matters which were admissible. If it should be conceded that the testimony of Winterrowd as to the failure of Rose, Adams, and McGowan to identify the true Green as the party who had aided in robbing them, and the identification of Childress as one of the parties, it could not be held harmful, if properly presented, because the same evidence went into the record without objection from Adams, Rose, McGowan, Childress, and Green. It was also admissible for the officer to testify that he went with Childress to a place on the side of the road where Childress said in his testimony the whisky had been set out, and that at the place pionted out by Childress witness saw tracks going from the road over into the ditch and the prints of boxes there in the mud; that in a place pointed out to him by Childress he found certain whisky; Childress having theretofore testified as to the whereabouts of the whisky in question. Marta v. State, 81 Texas Crim. Rep., 135, 193 S. W., 323; Huey v. State, 81 Texas Crim. Rep., 554, 197 S. W., 202; Willman v. State, 92 Texas Crim. Rep., 77, 242 S. W., 746. Of course, it was improper for Winterrowd to testify what Childress told him in regard to the matters referred to, and, if the particular things Winterrowd said had been told him by Childress had been properly segregated in an exception, then we would have a question similar to that discussed in Howard v. State, 92 Texas Crim. Rep., 221, 242 S. W., 739. As the matter is presented here, we hold that bill of exception No. 16 is too general to receive consideration.

It is not necessary to discuss in detail bill of exception No. 17. It presents complaint of the testimony of Burrow, another officer who was called by the state in rebuttal. He was with Winterrowd and Childress at the time they went to the place near the underpass where prints of boxes were found on the ground, and also where certain whisky was recovered that was pointed out by Childress. What has been said in regard to bill of exception 16 in this particular applies to bill No. 17.

By the third exception to the charge appellant directed the attention of the court to the fact that he desired an instruction which was not contained in the charge, to the effect that if appellant was present when money was taken from McGowan by Childress, and it was taken without the knowledge or consent of appellant, he would not be guilty. We are of opinion such an instruction under the facts would not have contained a correct principle of law. The state's testimony presented the theory that appellant was a party to a conspiracy to commit the offense of robbery. If the jury believed that Childress, appellant, and others had conspired to rob McGowan and others of whisky, appellant would not be free from guilt if in fact his coprincipal Childress robbed McGowan of money. Under such circumstances, appellant would be responsible for the acts of his coprincipals. We do not discuss this question at length. The principle is well established and was considered in Shelburne v. State, 111 Texas Crim. Rep., 182, 11 S. W. (2d) 519, in which a number of authorities will be found cited.

The court charged the jury as follows: "All persons are said to be principals who are guilty of acting together in the commission of an offense; and when an offense is actually committed by one or more persons, but others are present and knowing the unlawful intent of the person or persons actually committing the offense, aid by acts or encourage by words or gestures those actually engaged in committing the unlawful act, become principal offenders, and may be indicted and prosecuted as such. Any person who aids, advises or agrees to the commission of an offense, and who is present when the same is committed, is a principal, whether he aids in the unlawful act or not. You are instructed that the mere presence of the defendant at the time and place of the commission of the offense, if he was present, is not sufficient to show that he was a principal offender, but the evidence must go further and show that the defendant either agreed to the commission of the offense, or aided by acts or encouraged by words or gestures Stacey Childress, Jim Everett and Billy Batchelor, or either of them,

in the commission of the offense, if any; and unless you find and believe from the evidence, beyond a reasonable doubt, that the defendant agreed to the commission of the offense, if any, committed by said Childress, Everett and Batchelor, or either of them, or aided by acts or encouraged by words and gestures the said Childress, Everett and Batchelor, or either of them, in the commission of the offense charged, then you will find the defendant J. W. Cadle not guilty, even though you may believe that Stacey Childress, Jim Everett or Billy Batchelor, or either of them, committed the offense charged."

Appellant claims that he was not a party to a conspiracy to rob the men from Dallas, but that his part in the transaction was because of a willingness to aid officers in apprehending violators of the law; that he did not consent to, acquiesce in, or know of, the taking of money from the Dallas parties, and, if any robbery occurred, he was not present and had no knowledge of it. He complains that the above charge given by the court does not sufficiently present his defense. Appellant appears to have undertaken to call the court's attention to the matter by his first exception to the court's charge, which is as follows: "Defendant excepts to said charge because it does not give nor instruct the jury that if they find from the evidence that the defendant J. W. Cadle was present at the time of the alleged offense that he was there by invitation of W. W. Batchelor, Jr., a Deputy Sheriff, for the purpose of assisting him in enforcing the law, and that as such he was for that purpose only authorized to act with said officer in arresting persons found with intoxicating liquor in Ellis County."

It is evident that the exception is not clear, and that the objection was not specific, as required by article 658, C. C. P. The exception, however, in connection with requested charges 1 and 5, which were by the court refused, may have been sufficient to call the court's attention to the matter sought to be submitted. By special charge No. 1 appellant desired the court to instruct the jury that, if appellant, acting with Batchelor, Everett, and Childress, did not intend to take money or other things of value from the Dallas parties, and caused Childress to search said parties "*for guns only*," and not for money or property, and that Childress, unknown to appellant, took from McGowan the $95 in question without the knowledge of appellant, they should acquit him. Special charge No. 5 would have had the court tell the jury that an officer had the right to deputize a citizen to assist in making an arrest, and, if they believed Batchelor was a deputy sheriff and had requested ap-

pellant to assist him to arrest parties who were expected to bring intoxicating liquor into Ellis county, then the jury was instructed that appellant had a right to assist Batchelor in using all lawful means to make the arrest of parties so violating the liquor law. These two special charges may be considered together, and whether or not their refusal was such error as calls for a reversal depends upon the evidence found in the record. The only mention we find in the evidence with reference to a search for a gun is in Childress' testomony. He testified that all of them had made it up to take the whisky from Rose and the other parties, and that they were going to make a raid and get the whisky; that, if the whisky was taken, witness knew he was to get about seven gallons of it; that at the time he made the arrangements with the parties in Dallas to bring the whisky to the underpass he did not intend to pay for it, and made the promise to them for the purpose of getting them to bring the whisky down; that it was the understanding of the parties acting with witness that they would get the whisky and that witness would get his part of it; that witness was not expecting to "hijack" anybody out of any money; that they were to arrest those fellows, and witness was to take part of the whisky and let the sheriff's office do whatever they wanted to with the rest of it; that, when witness got his hand in McGowan's pocket and found the money, he just took it; that he thought the others were going to arrest them; that, when witness searched them, he was not looking for money, but was looking for a gun. It is perfectly clear from the testimony that Childress never communicated with Batchelor regarding the venture, but that he talked to appellant beforehand about it, and that appellant was the man who took the matter up with Batchelor. Appellant claims that he agreed to assist Batchelor in arresting the parties, provided the parties would not be sent to the penitentiary. If he had gone further in his testimony and testified that, at the time the money was taken from McGowan by Childress, he (appellant) was not a party to an agreement to forcibly take whisky from the Dallas parties, and had no knowledge that Childress intended to or did take money from either of them, and that he held a gun on the parties, intending to arrest them, and that they were searched for weapons, in connection with such arrest, the issue sought to be presented by the special charges would have been pertinently before the court for submission. It is clear that any arrest or pretended arrest as mentioned by Childress in his testimony was a subterfuge; that the primary purpose on the part

of appellant and his companions was to forcibly take from the Dallas parties the whisky which they were to deliver at the underpass.

We are of opinion the issues sought to be presented by the refused charges find no basis in the state's evidence. Are they raised by appellant's evidence. His testimony, in substance, is as follows: According to his story, he had theretofore aided the officers in apprehending bootleggers and in capturing bootleg whisky. He admits that Childress had told him of his purpose in going to Dallas to induce parties to deliver whisky that might be taken; and that appellant mentioned the matter to Officer Batchelor; that he went to the place in Batchelor's car, which was stopped some two hundred yards south of the underpass where they could see the tail-light of Childress' car; that, after Everett appeared on the scene, appellant, Everett, and Batchelor remained in Batchelor's car. When the parties appeared from Dallas and the light signal was flashed as had been agreed upon, the Dallas car stopped for a moment by the side of Childress' car and then proceeded south, passed the Batchelor car, and went on toward Waxahachie; that Batchelor then drove his car up to where Childress was, and Childress reported that the parties said they had the whisky, and that he had told them to turn around and come back and unload it; that Batchelor, appellant, and Everett drove down the road toward Waxahachie, flashing their lights at every car they met; that they drove south until they passed Sterrett, when they met a car which answered their signal, but did not stop, and, it went on north towards the underpass; that they then drove back and asked Childress what those fellows said when they stopped, and Childress reported that they claimed not to have the whisky and had gone back towards Dallas; that Batchelor then got in Everett's car, and Everett and Batchelor followed after the parties toward Dallas. Appellant further testified that he and Childress then got in the Batchelor car and drove back down the road to see if they could find the whisky and found it by the side of the road; that Childress suggested putting it in Batchelor's car, but that appellant would not permit it to be done in the absence of Batchelor; that appellant then drove Childress near his home and put him out; that Childress at the time said he would beat the bootleggers back to where the whisky was; that later on appellant met Batchelor and Everett, who reported that they had not caught the parties and did not know the whisky had been found by appellant and Childress. Appellant denied specifically being present at any time when

the Dallas parties were "held up" and searched, denied holding a pistol on them, and denied that Everett held a flash-light on them. It is apparent that appellant by his testimony sought to leave the impression on the jury that no robbery or holdup of the Dallas parties occurred, or, if so, that neither he, Everett, nor Batchelor were present when it occurred, and knew nothing about it; and, further, if the whisky was taken away from the side of the road where he and Childress discovered it, that Childress, after being put out of the car by appellant, had gone back and taken the whisky. Appellant's defense was a denial of the whole transaction as claimed by the state. If any affirmative defense was presented by appellant's testimony, it was that of alibi. No request was made that this issue be submitted. As we understand the record, the charge given upon the converse of principals protected appellant in so far as the evidence made such charge pertinent. The jury was told substantially that appellant must have been present at the scene of the robbery, but that his mere presence would not be sufficient to show that he was a principal offender, but the evidence must show that he either agreed to the commission of the offense, or by acts or words aided or encouraged Childress, Everett, and Batchelor, or either of them, in the commission thereof, and that, unless the jury believed from the evidence beyond a reasonable doubt that appellant had agreed to the commission of the offense, if any was committed, by Childress or either of the other parties, or aided them by words or gestures in the commission of the offense, they would acquit appellant, even though they might believe that Childress, Everett or Batchelor, or either of them, committed the offense charged.

There are other matters mentioned in appellant's motion for rehearing which we regard as having been properly disposed of in the original opinion, and do not believe they call for further discussion. We have given the record in this case as serious and close consideration as is possible for us to do, and it is not thought any errors appear which would justify a reversal.

The motion for rehearing is overruled.

*Overruled.*

MORROW, P. J., dissents.

MORROW, PRESIDING JUDGE (dissenting).—Referring to the majority opinion, it is clear that, while the appellant, in his testimony, denied his presence at the time the robbery was committed and denied his participation therein, he did not deny

that he was a member of the party consisting of Everett, Batchelor, Childress and himself, who left their home on the night of the alleged offense and went to the underpass for the purpose of intercepting persons who were bringing a quantity of whisky to be delivered at or near the underpass mentioned. That he was present and took part in the commission of the robbery is the state's theory, supported by its testimony. It is thought that, if the appellant, as he claims in his testimony, was not a party to the conspiracy to rob the persons who were bringing the whisky by taking from them either the whisky or their money, and that his presence was motived alone by the willingness to aid in apprehending violators of the law, and did not assent or acquiesce in or know of the taking of the money from Rose or McGowan, he would be entitled to an acquittal of the robbery. The appellant's testimony cogently presents the theory that his presence at the underpass and his association with the parties charged with the commission of the robbery was for an innocent purpose; that is to say, he was there to aid an officer of the law in its enforcement. This theory explaining his presence having been put in the record before the jury, his contention that the law required, at his request, an instruction to the jury that, if they believed his affirmative defensive theory, he should be acquitted, is regarded as sound. That such an instruction is necessary to properly protect the rights of the accused in a case where he relies upon the defense of alibi is settled without conflict. See Hunnicutt v. State, 18 Texas App., 498, see page 516; McAfee v. State, 17 Texas App., 131. So, in a burglary case, where there is an issue of consent to the burglary, this court has affirmed the right of the accused to a presentation of the theory in an affirmative manner. See Bird v. State, 49 Texas Crim. Rep., 96. So, in a trial for aggravated assault, where there is affirmative testimony presenting the theory of want of intent to injure, the requirement of an affirmative presentation of the defensive theory has been affirmed. See Moody v. State, 52 Texas Crim. Rep., 232. Many additional cases might be cited illustrating the principle asserted, namely, when facts appear in the record presenting an affirmative defense, as that term is understood, a charge is incomplete which fails to direct the attention of the jury in a specific manner to the defensive theory. See McCall v. State, 14 Texas App., 353; Regittano v. State, 96 Texas Crim. Rep., 477.

The conclusion above stated is emphasized by the refusal of the court to give to the jury, in substance or in effect, appel-

lant's special charge No. 5, in which it was sought to have the jury instructed that, if from the evidence it was believed that W. W. Batcheler was a commissioned deputy sheriff of Ellis county, and had requested the appellant to assist him in making the arrest of persons who were violating the law, the appellant had a right to be present and by all lawful means assist in arresting persons who were violating the liquor law. Touching the right of the appellant to be present in accord with his theory, namely, that he was acting under deputation from a deputy sheriff, the charge of the court is silent.

In failing to give to the jury an instruction embracing the theory and contention of the appellant, as supported by his testimony, the opinion is expressed that the court was in error of a nature which should bring about a reversal of the judgment of conviction.

The motion for rehearing should be granted.