## HAROLD RYLEE V. THE STATE.

No. 18286.   Delivered June 24, 1936.
State's Rehearing Denied October 14, 1936.

The opinion states the case.

*Oscar Callaway,* of Comanche, *J. A. Johnson* and *Oxford & McMillan,* all of Stephenville, and *J. R. Creighton,* of Mineral Wells, for appellant.

*Ernest Belcher,* District Attorney, of Stephenville, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

HAWKINS, JUDGE.—Conviction is for murder, punishment assessed at confinement in the penitentiary for a term of twenty-five years.

The party killed was T. C. Mitchell. The testimony on behalf of the State is to the effect that on the day of the homicide deceased, accompanied by his cousin (Dalton Mitchell) and two other parties, visited appellant's place of business twice in the afternoon, one time early in the evening and again later. On this last visit only deceased and Dalton Mitchell were present. For the facts incident to the killing the State relied upon Dalton Mitchell, who testified that when he and deceased drove up to appellant's place of business the last time witness stopped the car immediately in front of the cafe; that deceased got out of the car and went into appellant's place of business. Appellant had not been present at the time of the former visits, but when witness and deceased drove up the last time appellant was standing in the door; that deceased inquired of appellant if he had any whisky, to which appellant replied that he did, but did not know that it was "his flavor." Deceased then entered appellant's place of business and went toward the counter. Appellant went around behind the counter and, according to Dalton Mitchell, picked up a pistol and without any other words, shot deceased three times, from the effects of which he died almost instantly. Appellant did not testify, but from other witnesses it was shown that upon the day of the homicide appellant was in the City of Fort Worth and his wife was running the business of the sandwich shop and cold drink stand. It was claimed by the wife in her testimony that when deceased and his companions came into the sandwich shop the first time, about two p. m., they took seats at a table and she served them with cold drinks. While they were in the shop the owner of two slot machines came in and took the money out of them and delivered to the wife of appellant thirty dollars, which she took to her living room in the back part of the shop. She claimed that after the owner of the slot machines had gone deceased and his companions started to leave, but that deceased lingered about the slot machines a few minutes after his companions had gone outside, then came to the counter, took hold of her arm, told her he would like to have a date with her; that he attempted to kiss her and pulled her over the counter; that she repulsed his advances and told him not to come back; that about four p. m. deceased and his companions did come back but she declined to serve them any cold drinks at that time. They left, and about eight p. m.

deceased and Dalton Mitchell came back and deceased entered the sandwich shop while Dalton Mitchell went to the rear of the building; that when she observed their maneuvers she became uneasy and requested a customer then in the shop to remain for her protection. She again ordered deceased to leave, which he did. When her husband came home she told him all that deceased had done and said on his several visits to the shop. She testified that while appellant was placing his car in the garage deceased again came into the shop and walked up to the counter behind which she was working; that she again told him to leave and when he hesitated to comply with her request she herself got the pistol and shot him.

It was a sharply contested issue upon the trial as to whether the car in which deceased and Dalton Mitchell came to the sandwich shop immediately before the killing was stopped in front of the shop in such a position that Dalton Mitchell could see inside and observe the killing as claimed by him, or whether the car was driven past the door of the shop and stopped in such a position that Dalton Mitchell could not see inside. In other words, it was the contention of appellant that Dalton Mitchell had not seen the shooting as claimed by him.

Bill of exception number two reflects that after Dalton Mitchell had testified that from his position in front of the shop he saw appellant shoot deceased three times, appellant called as a witness W. A. Mathews who testified that some six weeks after the killing Dalton Mitchell came into witness' place of business and witness asked him how the killing occurred, and that Dalton Mitchell said he did not know; that he was not where he could see the difficulty nor hear any words. Upon cross-examination of the witness Mathews the Assistant District Attorney asked the following queston: "Did you ever murder anybody?" and the witness answered "Yes." Appellant's counsel immediately objected to the question upon the ground that it was irrelevant, immaterial and not a proper question, stating at the time that the question should have been whether the witness ever had been indicted for murder. Counsel for appellant reserved exception evidently to the question of State's counsel. In approving the bill the trial judge stated in substance that when the question was asked the witness answered "spontaneously," and that no request was made of the court to withdraw the question and answer from the consideration of the jury, and that if such request had been made he would have immediately instructed the jury not to regard it. Counsel for

appellant, evidently seeking to counteract as much as possible the effect of the improper conduct of State's counsel in getting before the jury a fact not provable against witness, asked the witness Mathews if he had ever been indictment for murder, to which the witness replied as follows:

"I never was charged or indicted for murder, but a fellow came into my place one night and drew a gun on me, but no charge of murder was filed against me, I never was indicted by the grand jury for murder and I never was tried for it."

It has been the uniform holding of this court that proof of mere accusations against, or evidence of particular acts of misconduct is not admissible to affect the credibility of a witness. He can only be impeached as to offenses by showing that he had been legally charged or convicted of a felony, or of a misdemeanor involving moral turpitude. The rule is illustrated in Cadle v. State, 122 Texas Crim Rep., 595, 57 S. W. (2d) 147, in which accused sought to elicit from a State's witness that he was engaged in the business of bootlegging. In announcing that the trial court correctly excluded the testimony this court said:

"Complaint of the rejection of testimony sought to be elicited from the State's witness Stacey Childress on cross-examination by appellant, if he was not engaged in the business of bootlegging, seems within the rule laid down that a witness cannot be impeached by proof of particular transactions. There was no effort made to show that these matters had ever been made the subject of indictment or arrest for any purpose."

Other cases announcing the rule are Stages v. State, 120 Texas Crim. Rep., 447, 47 S. W. (2d) 820, and numerous decisions found collated in Branch's Ann. Tex. P. C., Sec. 158, page 102. In the present case it is affirmatively shown that Mathews had not been indicted for the offense of murder. While the trial court stated that he would have withdrawn the question and answer from the consideration of the jury if he had been requested so to do, it is apparent from the bill that appellant excepted to the asking of the question. That the question and answer were calculated to cast reflection on the witness is obvious. The improper question resulted in getting before the jury the fact that the witness had killed a man, which was not provable as affecting his credibility as a witness, in the absence of an indictment or a conviction therefor. If the court had withdrawn the question and answer the harm had already been done. This court has so repeatedly laid down the rule for pro-

cedure when impeachment of a witness is sought because of indictments or convictions that a violation of it almost seems inexcusable. It jeopardizes the State's case and leads to the result which follows here. The effect in the present instance was to get before the jury the fact that Mathews was a killer himself and therefore leave basis for the inference that he was in sympathy with appellant and might be falsely testifying in his behalf. In view of the closely drawn issue as to whether Dalton Mitchell was in a position to have seen the killing the testimony of Mathews as to what Mitchell said in regard to the matter was of vital importance to appellant. Under the circumstances here presented we can not say the incident complained of was harmless.

Bill of exception number three reflects that same counsel for the State in further cross-examination of the witness Mathews asked "Have you been raided several times in the last few months?" When this question was objected to counsel changed the form of his question, but the question as first formed was in keeping with what he had asked the witness in regard to having theretofore murdered a man. We would not feel authorized to base a reversal upon the complaint brought forward in said bill.

Other complaints are brought forward in various bills of exception, none of which is regarded as presenting reversible error. However, the cross-examination of appellant's wife regarding her marriage with appellant, as reflected by bill number seven, is not to be commended, and should not be indulged in upon another trial without more justification therefor than appears from the present record.

For the error heretofore discussed the judgment of the trial court is reversed and the cause remanded.

*Reversed and remanded.*

ON STATE'S MOTION FOR REHEARING.

CHRISTIAN, JUDGE.—After reexamining the record in the light of the State's motion for rehearing we are constrained to adhere to the conclusion expressed in the original opinion.

The motion for rehearing is overruled.

*Overruled.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.